JAMES G. BELL *v.* THE WESTERN MARINE AND FIRE INSU-
RANCE COMPANY.

Where a witness cannot be benefited by a decision, be it either way, no objection can
be made to the admission of his testimony.

The contract of assurance must always be made in writing. The terms of the con-
tract must be sufficiently expressed, every necessary stipulation being inserted.
The policy is the contract between the parties, and, as a general rule, all proposals
or conversations prior to the subscription, are considered as waived, if not inserted in
the policy, or in a memorandum annexed to it. Correspondence, or other commu-
nications cannot be referred to, unless to explain some ambiguity, or to sustain an
allegation of error or fraud, or some fact that would have affected the risk.

Parol evidence is admissible to establish the truth or falsehood of a representation
made to obtain a policy, or to show who is included in a policy made *for the benefit
of whom it may concern.* But where a party is expressly named, and his interest
specified, or legally understood or presumed, the policy cannot be changed or alter-
ed by parol evidence, unless on an allegation of fraud, error, or other legal cause.

Policies of insurance are to be construed like any other written contract, in which the
intention of the parties must be sought in the instrument itself. Plain mistakes, and
frauds, may be corrected.

All losses or risks may be insured against, except such as are forbidden by public
policy, or positive prohibition, or those occasioned by the misconduct or fraud of the
insured.

It is essential to the contract of insurance, that there should be an interest at risk;
but not that the thing insured should have what is properly called a value, or price,
or be assignable.

Policies may be effected on a future interest, but the interest must subsist at the time
of the loss, to give rise to a claim for indemnity.

A mortgagee, or creditor having a lien on property, has an insurable interest. It
makes no difference that a superior lien exist in favor of another, if anything re-
mains for the insured. A lien, which is invalid, will not create an insurable interest;
but it is sufficient, if it can be enforced between the contracting parties. Thus the
interest of the mortgagee in an unrecorded mortgage, is an insurable one, though
the mortgage would be without effect as to third persons.

The interest of the party by whom property is held as security, is an insurable one.
Hence the right of agents, consignees and factors, to insure the goods of their prin-
cipals.

Where the policy on a steamer, obtained by the owner, does not prohibit him from
selling, he can do so without forfeiting it, if the insurers are not thereby put in
a worse situation; and where he retains a mortgage, or a privilege thereon as ven-
dor, he will have an insurable interest, and may recover on the policy. It is not ne-
cessary that the interest at the time of the loss, should be the same as that existing
when the policy was obtained.

The vendor of a steamer, or other vessel has a privilege on the thing sold, in the same
manner as the vendor of other property. C. C. 3204, sec. 8.

Bell v. The Western Marine and Fire Insurance Company.

A general description of the thing insured is sufficient. One owning but a part of a ship, or of a quantity of goods, or a mortgagee may insure generally, without specifying his interest.

An application for insurance *for whoever it may concern*, is sufficient notice to put the insurers on their guard, and to throw upon them the *obligation of inquiring further*, if other information be desired.

A deviation is the increasing, or varying of the risk insured against without necessity, or reasonable cause.

Where a boat, on which insurance had been effected by an owner or vendor retaining a privilege, is removed to the opposite side of the river by the Marshal of a court in which she had been libelled, and there kept by him, there being no proof that the risk was at all increased, it will not amount to such a deviation as to forfeit the policy ; nor will it be forfeited by the fact that she had not a captain and crew on board when so laid up. When on a voyage, or in a port receiving or discharging cargo, a boat should be properly manned and officered; but it is neither usual, nor necessary, when laid up.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. The facts on which this controversy turns, will be found at length in the opinion delivered by GARLAND, J., in the case referred to by the court, when this case was before it on a former appeal. See 3 Robinson, 428. A judgment rendered by the lower court, in favor of the plaintiff, having been reversed, this case was remanded for a new trial, the court declaring, that there were " circumstances in it which induced a strong suspicion, that the defendants knew that there was an agreement to sell the boat to Northam, and that a contingent interest was really intended to be insured, although Bell's legal title was not technically divested ; but that these circumstances were not sufficiently shown to justify an affirmance of the judgment."

On the second trial, Lawrason, the Secretary of the Western Marine and Fire Insurance Company, was examined on behalf of the defendants. He testified that he was in the employment of the defendants at the time of the execution of the policy sued on, as a recording clerk ; that it is the invariable practice of the President of the Company, to inquire of all applicants for insurance on steamers, as to the nature of the interest to be insured ; that he is more particular with regard to steamboats, than any other description of property ; that he always causes the nature of such interest to be recorded in the books of the office ; that he, witness, recorded in the office books, the policy in this case ; that the

record was correctly made; that he does not doubt, if the plaintiff had stated to the President of the Company, that his interest in the steamer was but that of a creditor, the character of that interest would have been clearly stated in the policy of insurance, and have been so entered on the books of the office; that he, the witness, has made out many policies for the defendants, and his practice has always been to state distinctly the character of the interest insured, and this he has done under the orders of the President; that the reason why he is more particular with regard to insurance on steamboats is, that the risk is heavier and the contracts longer; that the business of the office is very great, and the President trusts nothing to his memory, but states everything in the policy; that the office has effected insurance for parties interested in steamers, but the character of the interest is, in all cases, expressly stated. On his cross-examination, this witness stated, that he thinks he must have been present when Bell made his application, but that he does not recollect him, and that he has no recollection of any conversation between him and the President of the Company.

The plaintiff offered in evidence the testimony of one Northam, taken under a commission, which was objected to by the defendants, and rejected on the ground of interest. This witness stated that, in August, 1839, he agreed to purchase from the plaintiff, the steamer Bayou Sara, for $18,000, payable in three instalments, to wit: the first note for $8,000, dated 1st September, 1839, payable six months after date; the second and third notes for $5,000 each, of the same date, payable one at twelve, and the other at eighteen months after date. That two of the notes were endorsed. That he was, at first, sole owner of the steamer, but afterwards sold one sixth to L. E. Hooper. That he received a notarial act of sale of the boat; that the notes were identified with the act of sale, and were dated the 1st September, 1839, from which day, he agreed to receive the boat, and to become liable for the wages of the officers and crew. That after giving the necessary information to the notary for the preparation of the bill of sale, plaintiff and himself went to the office of the defendants, where he does not recollect seeing more than one person, whom the plaintiff addressed as Mr. Matthews. To the best of wit-

ness' knowledge and recollection, plaintiff stated to Mr. Matthews, that he had sold the steamer Bayou Sara, and wished to get her insured. That there were other words spoken in conversation with regard to the sale and insurance of the boat, which he does not recollect. He thinks Mr. Matthews observed—*make your application;* which he believes plaintiff did, in writing. That from the office of the defendants, witness and plaintiff went to that of the Firemen's Insurance Company, where, he is under the impression, that two or three persons were present, with whom, plaintiff appeared to be acquainted; and to the best of witness' recollection, plaintiff made the same, or a similar statement to the one he had just made to the defendants. That plaintiff and himself, met at the office of the Notary the next day, (September 6th,) and signed the bill of sale.

In answer to the interrogatories propounded by the defendants, Northam stated : that he does not recollect of any person's accompanying the plaintiff and himself, to either of the Insurance Offices; that they visited those offices on the 5th of September, 1839. That his object in accompanying the plaintiff was to see, that the insurance was effected on the boat, he having agreed to pay the premium, and having promised his endorsers that the boat should be insured, and kept so until she was paid for. That he kept no memorandum of the conversations in the Insurance Offices, but does not doubt that he heard all that passed. That they were in each Office from five to ten minutes, as near as he can recollect; that he remained all the time with plaintiff in defendants' office, and thinks that he did so, also, in the Firemen's office. That Bell stated his interest as above described, in his conversations with the officers of the two offices. That he did not read plaintiff's written application, and, consequently, cannot say what was stated therein. That he can speak with confidence as to the correctness of the statements here made. That he thinks plaintiff made a written application to each office, while they were in said offices. That he had recently conversed with the plaintiff, in regard to the interrogatories that would be propounded to him in this suit. In answer to a question as to whether he expected to gain or loose any thing by the result of this suit, he stated that his pecuniary embarrassments were such, that he does

not know whether the decision of the case either way, can affect his interest.

It was agreed between the parties, that the plaintiff should sue for, and, if possible, collect the amount of the notes received by him for the price of the steamer, without prejudice to the rights of either party ; that, in the event of the judgment being affirmed in favor of the plaintiff, any amount received by him on account of the notes, should be credited to the defendants, they paying all reasonable costs and expenses, incurred by him in prosecuting the parties to the notes. The written abandonment by the plaintiff, and his claim for a total loss, was introduced in evidence.

There was a judgment below in favor of the plaintiff, for the amount of the policy, with interest at five per cent. from judicial demand. The defendants appealed.

*C. M. Jones* and *L. Peirce*, for the plaintiff. This case was remanded to enable the plaintiff, if in his power, to show, that at the time of effecting the insurance, the defendants were aware, that Bell was not insuring as owner.

In order to prove this fact, the testimony of Northam, who bought the boat from Bell, has been taken. It proves conclusively, that the insurers were aware, previous to the insurance, of the interest of the plaintiff. This testimony was objected to on the grounds : 1st. That Northam was interested. 2d. That no parol evidence of conversations previous to the written application and the policy, could be given.

As to the first point, that Northam is interested. It is evident, that his interest, if he have any at all, is equal. If the plaintiff succeeds he is liable to the defendants, and *vice versa*. In any event, he is bound to pay to one of the parties the amount of his notes.

The court below decided, that Northam was interested because he was bound to pay the premium. The words of Northam are : " My object in accompanying Bell to the Insurance Companies was to see, that insurance was effected, having agreed to pay the premium, and having also promised my endorsers, that the boat should be kept insured until she was paid for." From this it may be inferred, that it was the belief of Northam and his endorsers, that if the boat was lost, and the insurance paid, they

were released from all obligation ; but this is not so. See the decision of the Supreme Court in the cases, 3 Robinson, 428, and 16 Peters, 495. Even supposing, that Northam thought himself interested in the event of the suit, if he really were not so in law, he is competent. See, *Commercial Bank of Albany* v. *Hughes*, 17 Wendell, 94, and *Stall* v. *Catskill Bank*, 18 Wendell, 466. But the Judge of the lower court says, that because Northam agreed to pay the premium, he is interested. But with whom did he agree to pay the premium ? It was with Bell. He had bound himself to pay $18,000, for the boat ; but Bell, distrusting the solvency of Northam and his endorsers, and fearing, that if the boat was lost the notes would not be paid, required that Northam should pay to the Insurance Companies the amount of the premium necessary for the insurance of the payment of the notes, (the insurance being for the benefit, and on account of the interest of Bell) ; and this was the only way that Bell could receive the amount of the purchase money, for if he had paid the insurance premium himself, instead of receiving $18,000, he would only have received $16,200. The second objection to Northam's testimony is, that no parol evidence can be received, to alter, vary, or add to a written contract. Of this there is no doubt. But the question is, whether the evidence of Northam has any one of these effects.

The decision of the Supreme Court, in this case, settled the point. It was remanded for the purpose of allowing the plaintiff to show, that the Insurance Company was aware of his interest, the court believing, from the circumstances, that they had that knowledge. Now how was this fact to be proved, except by parol ; and it is, on the part of the Insurance Company, any thing but fair dealing to attempt to defeat a claim supported by evidence, which they have not in any manner impeached. But does the testimony add to, alter, or vary the policy of insurance ? The insurance was effected by Bell, *on account of whom it may concern.* These words, would cover the interest of any person in the boat for whose benefit the insurance was effected, and parol evidence has always been admitted to show; what that interest was, although the insurer was not informed thereof. We,

therefore, say that in accordance with the former decision in this case, the judgment of the court below must be affirmed.

In the case of *Dumas* v. *Jones*, 4 Mass. Rep. 647, the court decided, that where a party insured in his own name, he could only recover as far as he proved himself owner; but in 6 Mass. Rep. 216, in the case of *Lee et al.* v. *The Massachusetts Marine and Fire Ins. Co.*, they say : " Where a party insures *on account of whom it may concern*, it will cover the interest of any person as far as the contract may be found to have been authorized by mercantile usage, thus comprising the cases of *consignees, factors, trustees, agents, and persons having a qualified interest in the property insured ; and courts of law are liberal in the construction of such contracts.*" See also Phillips on Ins. edition of 1823, page 60. So, if a factor has made advances on goods consigned to him, for the payment of which he has an interest in the goods, an insurance in his own name, on account of whom it may concern, will cover that interest. In page 61 of Phillips (same edition), after citing numerous authorities, the author says : " From these cases it seems, that a policy of this description may enure for the benefit of the person effecting it, or to that of any other person whom he intends, or who requested him to effect it, or adopted it when made." Now, according to the doctrine above established, Bell must recover in whatever aspect the case may be viewed.

Was the application of Bell sufficient notification to the insurers, that other interests, except that of the owner, were intended to be covered ? If the doctrine laid down in 6 Mass. Rep. 216, be correct it certainly was, for no person, (much less an Insurance Company,) is presumed to be ignorant of the law ; and if an insurance, " on account of whom it may concern," would cover any person proving a qualified interest in the property, they are presumed to have known such to be the law. If they wish to know the interest, they are bound to inquire. If they do not, it is their own fault, and they must pay the insurance. See 1 Phillips on Ins. 242, 152, 299.

So that whether the insurance had been for Bell as vendor, and as a mortgage and privileged creditor, or for Bell on ac-

count of the debtor, Northam, the policy of insurance is full and sufficient.

*Maybin*, for the defendants. The court, in their opinion already delivered in this case, has settled two points : 1st. That Bell was the owner of the Bayou Sara at the time of effecting the policy of insurance, September the 5th, 1839, he having only agreed to sell her to Northam ; and 2d. That Bell had no right to change the character of his interest between the time of the insurance and loss, without the assent of the defendants. Their opinion on these two points will aid in disposing of this case. The court, thinking that, from some circumstances in the case, the defendants knew of the agreement to sell the boat, and that a contingent interest only was intended to be insured, ordered the cause to be remanded, to enable the plaintiff to show this knowledge on the part of the defendants. For this purpose the testimony of Northam, the purchaser, was offered, and objected to, because :

*First.* He was interested, and therefore not competent. He had agreed to assume the liabilities of the boat, for wages of officers, crew, &c., from September 1st, 1839, and he had promised to pay the premium, and also promised his endorsers on the notes given by him for the purchase of the boat, to insure her, and to keep her insured, till she was paid for.

*Second.* The evidence tended to contradict the application for insurance and the policy. That this cannot be done is well settled ; for, " whatever proposals are made, or conversations held prior to the subscription of the policy, are to be considered as waived, if not inserted in the policy, or in a memorandum annexed to it." 13 Mass. Rep. 96. The law, on this point, is well stated in 1 Phillips on Insurance, 23 to 29, edition 1840. The application and the policy are for insurance on the steam boat Bayou Sara, her body, tackle, apparel, and furniture. On these was the insurance effected. The testimony offered is to show, that the insurance was to cover a contingent interest, to the knowledge of the insurer. No error or fraud in the policy is alleged. It was on this principle, that this court, in *Lippincott* v. *Louisiana State Ins. Co.*, 2 La. 400, rejected even the application for insurance, when offered to explain or contradict

the policy. Lord Mansfield held, that the policy is conclusive proof of the intention of the parties ; and he would not permit the slip to be introduced to show, what kind of policy the parties intended to make. Douglass, 12 note. See 1 Phillips, 43 to 54.

But, even if admitted, the testimony of Northam does not established the fact of knowledge in the defendants. The utmost which he states is, that Bell, in his presence, told Mr. Matthews, that " he had sold the Bayou Sara, and that he wished to get her insured." On his cross-examination he observes, that Bell stated his interest as described by Northam in the conversations of Bell with the Insurance officers. But the character, the nature, the extent of Bell's interest, Northam does not allege that Bell communicated to Mr. Matthews—Whether it was absolute, or contingent ; as owner, or as creditor. Mr. Matthews, not willing to leave a matter so important to uncertainty, told Bell to put the application in writing, which Bell did. What was it but an application to insure the boat, her hull, tackle, apparel, and furniture. Mr. Matthews naturally concluded, that [he was the legal owner of the boat, and in this opinion this court has said, that he was right.

Northam admits, that he has recently had conversations with the plaintiff, in relation to this suit. How much of his impressions he may have received from the conversations we do not know. But the evidence of Lawrason, the secretary of the defendants, goes far to weaken that of Northam. He distinctly states, that Matthews trusts nothing to his memory, in consequence of the great business operations of the office ; that it is his invariable practice to make inquiries of applicants for insurance, concerning the nature and character of their interest ; that he is more particular with insurers on steam-boats ; that the nature, and character of the interest insured, are always recorded in the books of the office ; that in this very case, the witness himself recorded in the books, this policy ; that he has no doubt, that if Bell had stated to Mr. Matthews, that his interest in the Bayou Sara, was only that of a creditor, it would have been so stated in the policy, and so recorded in the books of the office ; that he has always, under the orders of Mr. Matthews, distinctly

stated the character of the interest insured ; and that insurances have been effected in the office of the defendants for persons who had liens on steamers, and that the character of their interest was stated in all the policies.

Such is the usage in that office, and the plaintiff contracted in reference to it, and under it ; and when the court considers the vagueness of the testimony of Northam, and the strong and unimpeached testimony of Lawrason, they will see no proof, that the defendants knew of any contingent interest which Bell wished to insure.

The defendants, therefore, urge :—1st. That if the plaintiff had any insurable interest in the Bayou Sara, as a mortgage or privileged creditor, or had any contingent interest in her, he ought to have disclosed it to the defendants. This he was bound to do : *First :* From the usage of the office of the defendants as above stated. A party contracting with an insurance office, contracts in reference to its rules, like one contracting with a bank ; and it is not necessary to show personal knowledge of the usage. 11 Wheaton, 431. 1 Peters, 25, 55.

2d. From the usage in this city, which made part of the contract. 1 Phillips, 43, 48, 51, edition 1840.

3d. From the decisions in our own country. The insurer has a right to be informed of every circumstance tending to *create* or increase the risk against which insurance is sought, and which, if disclosed, might induce him to decline or charge a higher premium. *Walden v. Louisiana Ins. Co.,* 12 Louisiana, 135. 2 Peters, 25. 16 Id. 495, 510.

The Judge below decided, that because the words *" for whom it may concern"* are used in the policy, the plaintiff did give notice to the defendants, not only of the character of his interest in the Bayou Sara, but also, that he was insuring for Northam, or the new owners. If such be the law, that those words *are* to cover any and every interest in the thing insured, the sooner our Insurance Companies know it, the better. But do the words " whom it may concern," support such a position ? The words are technical, and are understood to 'mean, not any one who may have an " interest in the thing insured, but only such as are in contemplation of the contract." 1 Phillips, 152. Whom did the parties

contemplate in the contract of policy? The actions or Bell answer the question. He makes the application for insurance—he accepts the policy—he abandons after the loss—he sues for the amount of the policy, and hints at no interest but his own—alludes to no person but himself. He takes Northam to the defendants, when he applies for insurance—does not speak of him to Mr. Matthews, and holds out to Mr. Matthews, no one but himself, as the person with whom the contract. was to be made. The person then in contemplation of the contract was the plaintiff only ; for he did not even state to Mr. Matthews, to whom he had sold the Bayou Sara. Whom, under these circumstances, could the defendants know but the plaintiff? If Northam is to be the person insured, has not the plaintiff led the defendants into an error, as Northam was present, when Bell made the application? And has not Northam also led them into an error? No one but the plaintiff was in contemplation of the defendants.

The Judge below, in a case of much importance, pushed his construction of the words " *whom it might concern,*" to an extent somewhat like that in his construction of them in the present case. The case was that of *The Alliance Marine Ins. Co.* v. *The Louisiana State Ins. Co.*, 8 La. 1, where the plaintiffs, who had paid to the assured the loss under their policy, called on the defendants for reimbursement, because the consignees in New Orleans, of the assured, had effected insurance with the defendants for one month on the same cotton, *for all whom it may concern,* and as one of the consignees deposed, the insurance was made without reference to any particular ownership, and expressly to secure the property against such risk, till it could be re-shipped on behalf of whoever might be interested in it, owners or underwriters, whether any part, or all was covered by marine policies in England. This was a strong case for the plaintiffs in that action, for the words seemed intended to cover every interest.

Yet this court decided against them, and held, that to render a contract of insurance valid, the mutual consent of the parties was necessary. A similar principle was maintained by Judge Washington, in 2 Washington C. C. R. 391, *Bauduy* v. *Union Insurance Company*, where the insured, supposing that $3000,

had been shipped on his account, insured that sum, in his own name, for *whom it might concern*, when, in fact, only a part of that sum had been shipped on his account. The plaintiff, Bauduy, having money on board the vessel, endeavored to recover his money under the same policy with the consent of the insured. Judge Washington held, that he neither procured the insurance himself, nor authorized any one to do it, and rejected the claim. (See 4 Wendell, 75.) Thus showing, that the assent of the insurer to the party contemplated, under the words " for whom it may concern," must be obtained.

But the plaintiff contends, that under the words " whom it may concern," he himself may recover his contingent interest; because agents, factors, consignees, mortgagees, may insure the subject generally in their own names, without disclosing their inerest as mortgagees, consignees, &c. This is admitted; but the reason on which this principle rests, does not apply to the case before the court. Consignees, factors, &c., are always in the possession of the property insured, and the legal title is in them, and in mortgagees for many purposes. *Conard* v. *Atlantic Ins. Co.*, 1 Peters' Sup. C. Rep. 337. 3 Kent, 129. 4 Id. 134. 1 Pickering, 389. But with us the possession is not vested in the mortgagee, or privileged creditor. And the legal title still remains in the mortgagor or debtor. A lender on bottomry must disclose his interest to the insurer, and in that case the debtor retains possession of the thing bottomried or hypothecated. 1 Phillips, 111, 169, 170, 194, 195, 196. By analogy, the same rule should apply to a mortgagee, who is not in possession. The reason of the principle does not, therefore, apply.

Not only is the reason on which that principle rests, not applicable to a privileged or mortgage creditor; but Bell had no such contingent interest at all, when he effected his insurance. This court has already held, that he was the owner, at the time of the insurance, of the Bayou Sara ; and, therefore, he could have no contingent interest. His policy, when it insured the body, tackle, &c., of the boat, insured him, as he was in truth, the owner.

Whether a mortgagor must disclose his interest, does not appear to be entirely settled. Phillips, vol. 1, 169, seems to think that

it is not necessary; but the cases referred to by him do not fully establish the principle. In 2 Caines, 19, and 1 Johns. 385, the mortgagor was in possession, bringing him within the principle as applied to a mortgagee. In 13 Mass. 61, all the facts were at the time communicated to the insurance office. In 13 Id. 101, the court did not consider the question settled. The case from Wright's Ohio Reports, was a *nisi prius* one. The position is stated in a charge to the jury, and no reason is assigned by the court, and the report of the case shows, that by consent of parties, Williams, the vendor and insured, and also the plaintiff, was left in possession of the boat. But it is not necessary to settle the point; and if it be, the cases in 2 Peters, 25 and 16 Id. 495, show the necessity of Bell's representing his interest in the boat to the defendants.

2. Bell, not being at the time of effecting the insurance, a mortgagee or privileged creditor, nor having any contingent interest at all in the Bayou Sara, he was owner, as has been already decided by this court. He could not have been a mortgage creditor, for he did not sell the boat till September the 6th, after the insurance, by which act of sale alone he could have a mortgage, if any could exist at all. He could not be a privileged creditor, for he had not sold the boat when he insured. Being then owner, on September the 6th, the day after the insurance, he sold the boat, and divested himself of his ownership, which was what he insured, and thus, changed his relations with the defendants. The interest insured must be the insurable interest at the time of the insurance, which, in this case was his ownership. 3 Kent, 257; 2 Phillips, 601 and 602; 2 Peters, 25.

This ownership he transferred, after the insurance, without the consent of the defendants, which, as this court has decided, he could not do.

3. Bell had no interest in the Bayou Sara at the time of her loss, for he was no longer owner, having by the act of September 6, 1839, sold her to Northam. He had no mortgage upon her. Such a mortgage cannot exist on a steamboat. 7 La. 487, 488. 17 Id. 159.

He had no privilege, as vendor, on the Bayou Sara at the time of her loss. She had been libelled in the United States Court for this District, and condemned, and ordered to be sold, and full and

entire possession had been taken of her by the Marshal, who kept her from February 26th, 1840, to April 19th, 1840, when she was burnt. The purchaser, Northam, therefore, lost possession of the boat, and the privilege of Bell, as vendor, consequently, ceased. Civil Code, art. 3194. The purchaser lost possession by the seizure and condemnation. 5 Martin, 268 ; 8 Id. N. S. 664 ; *Parish* v. *Hozey*, 17 La. 578 ; 2 Peters' Cond. Rep. 9 ; 4 Cranch Rep. 2 ; 10 Peters Rep. 400.

Bell took the endorsed notes and special mortgage on the boat, in *payment* of his privilege by the act of September 6th. There was a novation. He gave up his privilege for a conventional mortgage. 6 Mart. N. S. 636 ; 2 La. 111 ; 16 Id. 143. .

The 3194th article of the Civil Code, with regard to a vendor's privilege on movables, applies to sales of all movables but vessels. They are the subject of a special article, the 3204th, paragraph 8.

The credit of 6, 12, and 18 months, given to Northam for the purchase of the Bayou Sara, is inconsistent with the continuance of the privilege of Bell. 7 Peters, 344. Privileges are matters *stricti juris*. Civil Code, art. 3152.

Being neither owner, nor mortgage nor privileged creditor on the Bayou Sara when she was burnt, Bell had no insurable interest in her, and, therefore cannot claim a loss. *M'Carty* v. *Com. Ins. Co.*, 17 La. 366. The insurable interest of a party to whom property is hypothecated, depends on the validity of the hypothecation. 1 Phillips, 111 ; 3 Mason, 255.

4. The Bayou Sara was libelled for the just debts of the boat, and was in the possession of the Marshal about seven or eight weeks, and burnt while so in his possession. The defendants are not responsible for the acts of the Marshal. The debts were contracted by the captain of the boat, or by the other agents of Bell. 1 Phillips, 591, 592 ; 3 Kent, 303 ; 1 Emerigon, 363, *et seq.*; 13 La. 516. The Bayou Sara was insured as a river boat, and for the purposes of navigation, and not for her safety while under seizure in the hands of persons entire strangers to the defendants. The risk was, therefore, varied and enhanced, and there was, consequently, a deviation. In such a case the policy was at an end. 1 Phillips, 306, 480, 481, 483, 484, 485 ; 2 Peters' Cond. Rep. 403.

A deviation is not merely going out of the usual or direct course of the voyage, but it comprehends unusual or unnecessary delay, or any other act of the assured, or his agents, which, without necessity or just cause, increases or changes the risks included in the policy. 1 Phillips, 481. The consequence of a deviation is, to discharge the underwriters from their liability for any subsequent losses. The reason is, not that the property is thereby exposed to risks not insured against, nor that it ceases to be liable to the identical risks that are insured against, but it is that the risks are so affected, and varied, and confounded with others, that it is impossible to show that a loss would have happened but for the deviation. 1 Phillips, 484.

It is a matter of no importance, whether the risk is increased or not. 3 Kent, 312, 313. It is not the contract undertaken by the insurer; it is the substitution of another risk.

5. The steamer was not in a seaworthy condition at the time of the loss. The warranty of seaworthiness extends to the whole time insured. 1 Phillips, 308, 325, 326. The Bayou Sara was under the care and charge of one man. She was not sufficiently manned. The plaintiff is similarly situated to the shipper of goods, who is responsible in case of insurance for the unseaworthiness of the vessel, on board of which he ships his goods, though he did not appoint the captain or crew. 1 Phillips, 586, 587.

Bell having libelled the Bayou Sara, made the Marshal, or his keeper, his agent, to guard her; and Bell ought to have seen that she was well manned, and kept in a seaworthy condition. The Sheriff is the agent of the plaintiff in execution or seizure. *Williams* v. *Brent*, 7 Mart. N. S. 209. The insured always warrants the seaworthiness of the vessel, no matter who has charge of her.

6. This court has decided, that the insurance in this case attached no further than, to " secure the payment of the debt." Here the defendants were guarantors, as it were, of its payment; and the plaintiff should, before bringing this suit, have given to the defendants notice of the demand and non-payment of the debt so guarantied. Guarantors are only collaterally liable, on failure of the principal debtor to pay the debt. 7 Peters, 114; 2 Johnson's

Cases, 409.    The contract of guarantee, is to be strictly con-
strued.    7 La. 103 ; 15 Id. 187 ; 5 Peters, 624.

7. Interest should only run from the date of the judgment, and not
from October 23, 1840, the day of judicial demand.    Code of
Practice, art. 554 ; 7 La. 134, 506 ; 8 Id. 572 ; 11 Id. 236.

8. The notes held by Bell, ought to have been ordered to be de-
livered to the defendants, if they be condemned to pay the insu-
rance.    See authorities as to the effect of abandonment under the
first point.

*Grymes*, on the same side.    This cause having been remanded
for further evidence on one point, now comes up on the testimony
offered by the plaintiff to show, that the defendants had notice of
the interest of the plaintiff in the steamboat insured, and that
it was the intention of the parties to insure that specific interest.

Upon this, the only point now to be discussed, the defendants
will insist upon two grounds of defence : 1st. That the testimony
now offered by the plaintiff, is totally inadmissible.    2d. That, if
admissible, it does not sustain his case.

1st. It is totally inadmissible.    The contract is a written one,
and the original proposals are also in writing.    The contract pur-
ports to be an insurance upon the hull, tackle, and apparel of the
steamboat ; and the proposals for insurance are to the same effect.

This was clearly proved, upon the former trial, to be an insu-
rance as *proprietor*, upon the vessel as the property of the insu-
red.    4 Mason, 172 ; 2 Peters, 25 ; 3d Kent's Com. 257 ; 2
Mass. Rep. 369.

This contract cannot be varied, or altered, by parol testimony,
as to any thing said before, at the time, or after its execution.
13 Mass. Rep. 99.    The only exception known in the law, to
this general rule is, in some cases, as it regards usage, and to ex-
plain commercial terms that may be used in the contract.

The purport of the evidence offered in this case, is to change
the whole contract in its very essence, and to make it an insurance
upon an *interest* not mentioned in the contract, but clearly exclu-
ded by its terms.    This, we apprehend, cannot be done.

The more clearly to understand the nature and force of this ob-
jection, the attention of the court is particularly called to the testi-
mony.    The court will discover that the witness does not appear to

have had any personal knowledge of the person, with whom the plaintiff had the conversation he relates; but that he states, that after the conversation was over, and the communication made, the answer of the person (supposed to be Mr. Matthews, the President,) was, *make your application!* Thus clearly showing, that the defendant did not mean to contract in relation to any verbal communications that had been made; but that the whole was to be based upon the written proposals called for at the time, and followed up by the more formal and solemn contract in the policy.

The proposals were made in writing, and the contract or policy, was executed after this conversation. The plain and simple question is,—are these contracts to be changed, in most essential matters, by a conversation which preceded the execution of both instruments? We conclude, that there can be no doubt such testimony should be rejected.

But secondly, suppose, for a moment, that parol testimony could be admitted to vary, or explain the meaning of the parties, as expressed in the written contract, we contend, that the evidence offered is not sufficient to sustain the plaintiff's position.

The only witness offered, is the purchaser of the boat, the real owner at the time the loss occurred. His interest, if not so direct as to render him incompetent, is yet sufficient to create a considerable bias on his mind, and all he says should be received with great caution. He does not appear to have known the name, station, or authority of the person with whom the plaintiff held the conversation he relates, or to have had any knowledge of his person, previous to such conversation, so as to identify him as a person authorized to receive representations, or to bind the defendants. His recollection of what did pass between the plaintiff and the officer of the Company, is entirely too general. Though specially interrogated in the cross interrogatories, he can say nothing as to the particulars of the conversation. He can only speak of the meaning—the end to be arrived at, which was that he had sold the boat, and wished to get *her* insured. It was not stated to whom he had sold her, for whose account he desired to insure her, nor *what interest* he wished to insure.

Now we conceive that, if the policy set forth a subject matter, or an interest in the thing intended to be insured, with certainty,

in terms, or by legal intendment, and it is sought to substitute another by parol evidence, that the interest so sought to be substituted, should be set forth and proved with equal certainty and clearness. As to the specific nature of the interest intended to be insured, its value, or any other circumstance in relation to it, the testimony is entirely silent, the whole being comprised in the declaration that the plaintiff had sold *her*, and wished to get *her* insured.

The witness does not appear to speak positively, even to the extent that his testimony goes. As to the time when he accompanied the plaintiff to the defendants' office, he begins by saying, " as well as I recollect," &c.; and when he comes to relate the conversation, he says : " and to the best of my knowledge and recollection, stated to him that he had sold," &c. and that the whole time of the visit was from five to ten minutes. There is, therefore, a total want of that certainty necessary to establish a specific contract, in relation to the delicate and complicated subject of insurance and insurable interests ; and the only safe plan will be, to let the written contract speak for itself, and to be guided by it.

The witness discloses in his answer, that he was *to pay the premium* of insurance ; that he had pledged himself to his endorsers, to keep the boat insured until he paid the price, or his notes given for the price ; and he seems to think the insurance was made at his instance. If this be true, it was the interest of the witness that was intended to be insured, and the plaintiff cannot maintain this action. The law will not warrant, and justice does not require, that the plaintiff should be permitted to pocket the amount of the insurance, and leave the endorsers on the witness' notes, for whose protection it was made, exposed to lose the amount of the notes, and this, without his having paid any *premium*, or *consideration*, for the indemnity.

GARLAND, J. This case was before us in January last, and remanded for a new trial, for the purpose of enabling the plaintiff to show that the defendants knew, at the time of making the insurance, that there was an agreement to sell the boat insured to Northam, and that a contingent interest was really intended to be insured, although Bell's legal title was not technically divested. 3 Robinson, 428. To establish this fact of knowledge, the plain-

tiff offered the deposition of Northam, the purchaser of the boat. He testified, that the plaintiff and he went together to the office of the defendants, where, he saw only one person, whom the plaintiff addressed as Mr. Matthews; (that being the name of the President of the Company,) that plaintiff stated to him that he had sold the steamboat Bayou Sara, and wished to get her insured. Some other words passed, but what they were the witness does not recollect. The person addressed, said—"make out your application;"—which was done in writing, in the terms expressed in the policy. From the office of The Western Marine and Fire Insurance Company, the witness says, that he and the plaintiff went to the Firemens Insurance office, where two or three persons were present, with whom the plaintiff was acquainted, but who they were, the witness does not know. There, he says that plaintiff made a similar statement to that he had made at the first office. He further says, that his object in accompanying the plaintiff, was to see that an insurance was effected on the boat, he having agreed to pay the premium, and also promised his endorsers that the boat should be insured, and kept so until she was paid for. He says, "Bell stated his interest as described in his conversations with the officers of the two insurance offices." The deposition of this witness, was objected to, by the counsel for the defendants, on the ground of his being interested, and rejected by the court; but judgment was given in favor of the plaintiff, as the Judge below thought that the sale was made on or before the 1st of September, 1839, although the notarial act (which the Judge considered only as higher evidence of the previous agreement,) was not passed until the 6th of the same month, and that the affidavit of the plaintiff in the libel suit, in the United States Court, was not a contradiction of the parol agreement for a sale made on the 1st September. The Judge further said, that when a party insures in his own name, he is presumed to insure as owner, unless he gives notice, and that a change of interest avoids the policy. He then proceeds to say, that when Bell made an insurance in his name, for *account of whom it may concern*, it was a notice that he was not insuring entirely on his own account, and that, if the Company desired further information, it was their duty to call for it. For these, and other reasons stated in his opinion, the Judge below, gave a judg-

ment for the plaintiff, upon precisely the same testimony as was before him in the first instance, from which, the defendants have again appealed.

The first question which arises in the case, is on the bill of exceptions taken by the plaintiff, to the rejection of the deposition of Northam, on the ground of his being interested. In this, we think the Judge erred on the ground taken, as we are unable to see what interest he has in this suit. Let the decision be either way, he is not benefitted by it. If the plaintiff fails in the suit, Northam is bound for his notes to him ; if he succeed, it appears to be conceded that those notes will, under the abandonment, pass to the defendants : and so well do the parties seem to understand this, that an agreement exists between them, that the plaintiff shall prosecute their collection, without its prejudicing the rights of either party to this controversy. If the plaintiff does not succeed, Northam is not bound for the premium ; if he should succeed, he will be bound, and then his interest is adverse to that of the plaintiff, by whom he is called to testify.

But taking this testimony for all it is worth, the question recurs, does it entitle the plaintiff to recover? The contract of insurance must always be made in writing, (1 Phillips on Insurance, 7 ;) and must contain the terms of the contract sufficiently expressed. Ibid. 9. When made with a corporation, the reason for the contract being made in writing is stronger. It is, therefore, proper that every necessary stipulation should be expressed. Ib. 8, and authorities. The policy is the contract between the parties, and, as a general rule, all proposals made, or conversations had prior to the subscription, are considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it. 1 Phillips, 24 ; 13 Mass. Rep. 96, 172. The correspondence of the parties, or any other communications, cannot be referred to, unless for the purpose of explaining some doubtful clause, or ambiguity, or sustaining an allegation of error or fraud, or the like, (3 La. 548,) or something that would have affected the risk. Whether a representation were true or false, may be shown by parol. So may evidence be received to show who is included in the policy, when the assurance is made for the benefit of *whom it may concern*, and the like. But when a party is expressly named, and his interest

specified, or legally understood or presumed, the policy cannot be changed or altered in any manner, by parol evidence, unless on an allegation of fraud, error, or some other legal cause. The principles of construction in regard to policies of insurance, are the same as in all other contracts in writing, in which the intention of the parties is to be sought for, in the instrument itself. Emerigon says, it "is a law from which it is not allowable to depart under the pretext of pretended equity." Vol 1, p. 633, chap. 12, sec. 45. In the English and American tribunals, the doctrine is well settled, that contracts of this kind are to be construed fairly, and according to the words in which the parties have contracted. Plain mistakes in writing, as well as frauds, can be corrected ; and, if officers of insurance companies, by their skill and experience, entrap the unwary, or violate the confidence reposed in them, in consequence of their positions, a remedy will be afforded, upon proper allegations and proof. Reliance is often placed in the assurers, or their agents, in consequence of the confidence reposed in them ; and if they abuse it they are liable. .

As to the losses or risks that may be insured against, it seems to be well settled, that they may be against all losses, except " such as may be repugnant to public policy, or positive prohibition, or occasioned by his own misconduct or fraud." 3 Kent's Com. 228, Lecture 48. It is essential that there should be an interest at risk ; but it is not requisite, that the thing to which the insurance relates, or the thing to be assured, should be such, as to have what is properly called a value, or price, or be capable of being assigned. 1 Phillips' Insurance, 67. The life and liberty of a freeman may be insured. So may the life of a debtor, or a person drafted to serve in the militia. 1 Campb. 401 ; 2 Taunton, 214 ; 1 Phillips' Insurance, 67. Policies may be made in reference to a future interest, and upon the right of stopping the goods *in transitu* upon the consignee becoming insolvent. The interest of the assured must be subsisting at the time of the loss, in order to give a claim for indemnity. But let us see if the interest must be identical. In 4 Mass. Rep. 330, it was held, that the sale and conveyance in fee of a house insured, which the purchaser at the same time mortgaged back to the vendor, did not divest the assured of his interest under the policy ; for, though he

changes his title by the transaction from an absolute to a conditional one, yet he does not part with his insurable interest, since he continues. as mortgagee, to have an insurable interest in the property to its full value. 1 Phillips' Insurance, 72; 3 Burrows, 1512.

In the policy before us, there is no clause forbidding the sale of the boat without the assent of the assurers, and they appeared to have been indifferent as to who should have the control of her, as no one is named as master. On the contrary, they undertake to insure *whoever may be master.* The question as to who would be master, does not seem to have had any weight in estimating the risk ; and, we do not see that it would be diminished, or increased, by the interest being that of mortgagee to the full value, or owner.

That a mortgagee has an insurable interest is, in our opinion, unquestionable, and is supported by the best authorities. 1 Phillips' Insurance, 107; 9 Wendell, 404. So has any creditor having a lien on the property. Ibid. 108; 9 Serg. & Rawle, 103; and it makes no difference, if there be a superior lien in favor of another, if something remains for the assured. A lien which is invalid in itself, will not give an insurable interest ; but, if it can be enforced between the contracting parties, it is sufficient. For instance, an interest arising from a mortgage not recorded, might be insured, although the mortgage would have no effect against third parties. If the property is held as a security, it gives an insurable interest, and upon this principle rests the right of agents, consignees, and factors, to insure the goods of their principals. ·

We are of opinion that, at the time of making the insurance, Bell had an interest susceptible of being insured, and also at the time of the loss, although the interest was not of the precise character. We think this case rests upon the same principle as that in 4 Mass. Rep. 330. The policy not prohibiting Bell from selling, we think he could do so, if he did not thereby put the defendants in a worse situation than they were in before ; and that having, when he sold, retained a mortgage, or having the privilege of the vendor, he had an interest at the time of the loss,

The counsel for the defendants contend, that a ship, or steamboat, cannot be mortgaged, according to the provisions of the Code, except for special purposes, and in a particular manner, and that

there is no interest in Bell, as his mortgage is not one of those authorized by law. Admitting this to be true, then the privilege of the vendor remains, which creates an interest that can be insured. If the mortgage is invalid, it does not affect the privilege, which we think the vendor of a ship or steamboat has, in the same manner as a vendor of other property. We do not think that they are a class of vendors excluded by the Code; on the contrary, we think their rights are specially recognized by art. 3204, No. 8.

But, say the defendants, if the plaintiff had an insurable interest, he did not properly represent it to us at the time, and the policy is, consequently, void. The defendants have not given any evidence as to the character of the representation that was made, which will enable us to judge of its truth or falsity. The case, therefore, rests upon the policy. Phillips, p. 167, 168, says, " a general description of goods, freight, a ship, a house, or other thing insured," will be sufficient. If one own a half, or other portion of a ship or quantity of goods, he may insure generally, and recover for such interest as he has. 3 Mass. Rep. 133. A mortgagee may insure the thing mortgaged generally, without specifying his interest to consist in a mortgage. 4 Dallas, 421 ; 2 B. & Ald. 193 ; 2 Caines' Rep. 19 ; 13 Mass. Rep. 101.

The defendants have not objected to the deposition of Northam on the ground of its going to explain what took place at the time of applying for the policy ; and, as the verity of the representation is denied, which raises a question of fraud, we will consider it. It would appear from it, that the parties understood each other at the time ; at least, enough was said, to put the defendants upon inquiring further, if other information was desired. The fact of asking for an insurance for *whoever it might concern*, was calculated to excite attention, and put the underwriters on their guard.

Another ground of defence is, that there was a deviation. This is said to result from the boat having been taken possession of by the Marshal of the United States, when the libels were filed, and carried across the river opposite to the city, and there kept in charge of his deputy and another person, Northam being frequently on board. A deviation is the increasing or varying of the risks insured against, without necessity or reasonable cause. There is no evidence in the record that shows, that the risk was at all in-

creased by the boat being taken across the river. On the contrary the evidence is, that boats, when *laid up* on that side, are in less danger than when in the port, or on a voyage, and the premium for insurance is considerably less. The person who had the boat in charge, is shown to have been one accustomed to the business. We are not prepared to say, that every seizure of a ship or steamer, is to be considered a deviation and forfeiture of the policy.

The defendants further insist, that the boat was not seaworthy at the time of the loss, as she had not a captain and crew on board to protect her. When engaged on a voyage, or lying in port receiving or discharging cargo, it is proper that a boat should be properly officered and manned ; but, when *laid up*, it is not shown to be necessary, or usual.

Judgment affirmed.

