266 So.2d 178 (1972)
AIRVAC, INC., and Catherine Kirohn, Appellants,
v.
RANGER INSURANCE COMPANY, a New York Corporation, Appellee.
No. 70-1027.
District Court of Appeal of Florida, Fourth District.
August 7, 1972.
Rehearing Denied September 29, 1972.
Ray Sandstrom, of Sandstrom & Hodge, Fort Lauderdale, for appellants.
James v. Dolan, of Walsh, Dolan & Krupnick, Fort Lauderdale, for appellee.
CROSS, Judge.
Appellants-plaintiffs, Airvac, Inc. and Catherine Kirohn, appeal a final judgment in favor of appellee-defendant, Ranger Insurance Company, in an action on an aircraft insurance policy issued by defendant. We reverse.
In October 1967 Airvac, Inc. purportedly purchased an airplane from one Charles *179 Bush. By the terms of the purported sale, the purchase price was to be $50,000, of which $40,000 was to be evidenced by a promissory note executed in favor of plaintiff Catherine Kirohn, Bush's sister. The remaining $10,000 was to be payable to Bush. Airvac also executed a chattel mortgage in favor of plaintiff Kirohn to secure the promissory note.
On April 8, 1968, defendant issued an insurance policy on the airplane in question to Airvac. As a part of the policy, defendant issued a "breach of warranty endorsement"[1] in favor of plaintiff Kirohn. The effect of this endorsement was to protect Kirohn's interest as a lienholder on the airplane, the endorsement providing that the policy would not be invalidated as to Kirohn's interest by any act or neglect of the named insured, subject to certain exceptions not here relevant.
Early in July 1968 the airplane crashed. Defendant refused to pay, and plaintiffs brought this action to enforce their claims under the policy. The clause came on for jury trial. The trial court directed a verdict in favor of defendant against plaintiff Airvac, on the ground that at the time of the crash, the airplane had been engaged in an activity not covered by the policy and had been piloted by an unqualified pilot, contrary to the provisions of the policy.
The defense against plaintiff Kirohn's claim under the breach of warranty endorsement was that plaintiff had no insurable interest in the airplane, and that the endorsement was therefore unenforceable. Defendant contended that the purported sale of the airplane from Bush to Airvac was a sham transaction, Bush retaining both title to and possession of the airplane. Thus, contended defendant, the promissory note executed in favor of Kirohn as a part of the "purchase price," and the chattel mortgage securing the note were not valid obligations, and plaintiff Kirohn had no interest in the aircraft which could be characterized as insurable.
The trial court instructed the jury that there were two issues for their determination. The first was whether Airvac had been the owner of the airplane; that is, whether there had been a valid sale of the aircraft by Bush to Airvac. If so, then the verdict was to be in favor of plaintiff Kirohn; if not, the jury was instructed that the verdict must be in favor of defendant. If the jury found in favor of plaintiff, then the issue of damages was to be determined.
The jury returned a verdict in favor of defendant, and final judgment was entered accordingly. Plaintiff's motions for new trial and for judgment n.o.v. were denied, and this appeal followed.
The primary thrust of this appeal is whether the trial court erred in instructing the jury that if Airvac were not the owner of the airplane on the date in question, plaintiff Kirohn could not recover, notwithstanding the breach of warranty endorsement issued to her by the defendant. In order to reach a determination of the question whether the instruction of the trial court was erroneous, it is necessary to first determine what is a breach of warranty endorsement.
A breach of warranty endorsement is a clause which creates a new contract, creating the relationship of insurer and insured between the insurer and the lienholder, so that the policy is not subject to forfeiture because of any act or omission of the mortgagor, whether before or after the issuance of the policy.[2] Thus, the purpose of the policy is to protect the lienholder regardless of whether the mortgagor is entitled *180 to collect under the "main" policy of insurance.
A number of cases have arisen concerning the effect of such a clause. Nevertheless, we have been unable to find a case which resolves the precise problem presented here. One of the first major cases in this area is Syndicate Insurance Co. v. Bohn, 65 F. 165 (8th Cir.1894). In Bohn, the mortgagor had falsely represented to the insurance company that his interest in the mortgaged property was sole and unconditional, while in fact, a corporation of which Bohn and another were the sole owners held the legal title to the property. Under these circumstances, no valid insurance contract was ever executed between Bohn and the insurance company, because Bohn had misrepresented the question of ownership. Notwithstanding the fact that Bohn did not solely own the property, the lienholder was held to be protected by the standard mortgage clause against forfeiture of coverage. However, it can be seen that Bohn and his co-owner of the corporation did have an "insurable interest"[3] in the property. Cases similar to the Bohn fact pattern are not uncommon, and in each case recovery by the lienholder was allowed because the mortgagor had an insurable interest in the property covered by the insurance policy even though the mortgagor was not entitled by the terms of the policy to recover for the loss.[4] Conversely, where the mortgagor had no "insurable interest" recovery was not allowed. Imperial Bldg. & Loan Ass'n v. Aetna Ins. Co., 113 W. Va. 621, 166 S.E. 841 (1932).
In Imperial Bldg. & Loan Ass'n v. Aetna Insurance Co., supra, the mortgagor mortgaged a house on lot seven. The house, however, was upon lot six, and liability on the insurance policy was expressly conditioned upon the ownership in fee simple absolute of the property upon which the house stood. As this condition was obviously not met, the mortgagor could not recover. However, due to the presence of the standard mortgage clause, the court was also faced with the question of whether the mortgagee should be allowed to recover. In three separate opinions, all agreed that the mortgagee was also barred from recovery because there must be an insurable interest in the mortgagor-insured. While this particular rationale is not expressed in the Florida cases that have been decided, in all the Florida cases[5] where the mortgagee was permitted to recover, the mortgagor had an insurable interest in the property insured.
Applying these cases to the case sub judice, it is readily seen that the jury should have been instructed to determine not whether Airvac was the owner of the airplane, but whether Airvac had an insurable interest in the airplane. The nature of the transaction through which Airvac purportedly acquired the airplane is, of course, an important consideration in determining whether Airvac acquired any "actual, lawful, and substantial economic interest" in the airplane.[6] If Airvac did have an insurable interest, then the plaintiff, if she holds a valid lien, such as a mortgage executed to secure the unpaid *181 purchase price of property, is entitled to recover from the insurer because the mortgagee has an insurable interest in the property.[7]
If the mortgagor did not have or was not required to have an insurable interest, it could result in perpetration of a fraud upon an insurer as well as defeat the time-honored rule that in order to procure valid insurance, one must have an insurable interest. The reason for such a rule has been aptly stated by the First District in Skaff v. United States Fidelity & Guaranty Co., 215 So.2d 35, 36 (Fla.App. 1968), where the court stated that
"[t]he reason for the rule ... is to prevent insurance contracts from becoming wagering contracts in furtherance of public policy on wagering. In [the] absence of an [insurable] interest in the property to be insured, such a contract becomes in essence a wager which will not be sanctioned by the courts."
In conclusion, we have also determined to be error the failure of the trial court to instruct the jury on the defense of lack of an insurable interest inasmuch as the burden of proof on this issue was not adequately covered elsewhere in the instructions.[8] The defense of a lack of an insurable interest is an affirmative defense which the insurer must prove by the greater weight of the evidence.[9]
Accordingly, the judgment is reversed and the cause remanded for a new trial consistent with the views herein expressed.
Reversed and remanded.
MAGER, J., concurs.
REED, C.J., dissents, without opinion.
NOTES
[1] Also known as a standard mortgage or union clause.
[2] National Cas. Co v. General Motors Accept. Corp., 161 So.2d 848 (Fla.App. 1964); Martin v. Sun Ins. Office, 83 Fla. 325, 91 So. 363 (1922); Fire Ass'n v. Evansville Brewing Ass'n, 73 Fla. 904, 75 So. 196 (1917).
[3] See Fla. Stat. § 627.01041(2) (1969) F.S.A. "`Insurable interest' as used in this section means the actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." transferred to Fla. Stat. § 627.405(2) (1971), F.S.A.
[4] E.g., Western Assur. Co. v. Hughes, 179 Okla. 254, 66 P.2d 1056 (1937).
[5] See, e.g., cases cited n. 2 supra; Glen Falls Ins. Co. v. Porter, 44 Fla. 568, 33 So. 473 (1902). This list is not meant to be considered as exhaustive.
[6] See generally Grimm v. Prudence Mut. Cas. Co., 243 So.2d 140, 143 (Fla. 1971); Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193 (Fla. 1970); Prudence Mut. Cas. Co. v. Grimm, 233 So.2d 664, 666 (Fla.App. 1970) (dissenting opinion); Skaff v. United States Fidelity & Guar. Co., 215 So.2d 35 (Fla.App. 1968) (a person may have an insurable interest in a stolen automobile as he has a right to possession against all but the rightful owner).
[7] Rutherford v. Pearl Assur. Co., 164 So.2d 213 (Fla.App. 1964); cf. Bell v. Firemen's Ins. Co., 5 Rob. 446 (1843) (a lien, if invalid, is not an insurable interest but it is sufficient if it can be enforced between the parties); Bell v. Western Ins. Co., 5 Rob. 423, 39 Am.Dec. 542 (1843).
[8] It shoud be pointed out that on remand, plaintiff's recovery under the breach of warranty endorsement, if any, is not to be measured by the cash value of the airplane at the time of the loss, as the trial court had instructed the jury. Rather, recovery, if any, is to be measured by the amount of her lien which the endorsement purported to insure not to exceed the cash value of the airplane at the time of loss.
[9] Gatti v. American Bankers Ins. Co., 164 So.2d 840 (Fla.App. 1964).