LOUIS S. REED, ADMINISTRATOR, &c., ET AL., DEFENDANTS IN ERROR, v. THE FIREMEN'S INSURANCE COMPANY OF NEWARK, N. J., PLAINTIFF IN ERROR.

Argued November 30, 1910—Decided June 19, 1911.

1. The standard mortgagee clause creates an independent contract of insurance, for the separate benefit of the mortgagee engrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain, and understood by reference to the policy.

2. A policy of fire insurance in the standard form, which is void as to the assured owner, because of his breach of the warranty that his interest is not other than unconditional and sole ownership, may nevertheless be valid as to a mortgagee, when the mortgagee clause in the usual form is attached to the policy.

3. Unless the mortgagee clause attached to a fire insurance policy makes it obligatory on the mortgagee to furnish proofs of loss and an appraisement, it is not a condition precedent to his right of action that he furnish them.

4. An appropriation by the owner of the proceeds of the sale of the debris, after total loss, to his own use, would be an act of the owner, but such act would not invalidate the insurance of the mortgagee, or cast upon the mortgagee the burden of proving the amount realized from such sale.

---

On error to the Supreme Court.

For the plaintiff in error, *Pitney, Hardin & Skinner* and *Ralph E. Lum.*

For the defendants in error, *Joseph M. Roseberry* and *Samuel A. Besson.*

The opinion of the court was delivered by .

VOORHEES, J. This is a suit on a fire insurance policy issued by the Firemen's Insurance Company, to Ignatz Fabrikant, insuring him against direct loss or damage by fire, on two frame buildings in Hoboken, N. J. The body of the policy contained the following: "Loss, if any, payable to David F. and James A. Reed, mortgagees, mortgagee clause attached." The mortgagee clause, which was attached to the policy, as well as the policy itself, was the standard form. The suit is brought by the mortgagee.

The policy bears date October 9th, 1903, and on February 25th, 1905, the buildings were damaged by fire, as insisted by the plaintiff, to such an extent that they were past reparation, and so a total loss, while the defendant denied damage to so great an extent and insisted that the loss was only partial.

On March 8th, 1905, Fabrikant was notified by the building inspector of Hoboken, under an ordinance of that city, to raze the buildings within six days, because of their dangerous condition. The owner sold the buildings to a dealer in second-hand building materials, who, on or about April 9th or 10th, caused them to be torn down.

The plaintiff in error relies, for reversal, principally upon the following points: That the interest of the insured Fabrikant, was other than unconditional and sole ownership; that the loss was caused by order of civil authority and not directly by fire; that the company is not responsible for so much of the loss as was occasioned by ordinance or law regulating the construction or repair of buildings, and that this was such loss, and that there was no proof by which the jury could distinguish between that loss and the loss by fire; that there was no proof of loss made by anybody, either mortgagor

or mortgagee; that there was no appraisal by either mortgagor or mortgagee, although it was demanded by the company of both. In practically all of these points is involved the question: Is the mortgagee clause an independent contract? The contention that it is runs through all of the points made by the defendant in error, except the first point, which is a question of pleading.

We have thought well to eliminate all question of pleading at once, for in view of the conclusion arrived at on the merits, we may assume that the defendant is entitled to raise, under the pleadings as they exist, the several questions sought to be litigated.

We proceed, therefore, to examine the case upon the merits. The insistence of the defendant is that the mortgagee clause is not an independent contract, in the sense that none of the terms of the policy applies to the mortgagee, because it would then be unenforceable, because lacking certainty and completeness; because contrary to the intent manifested by the statute (*Pamph. L.* 1892, *p.* 366; *Pamph. L.* 1902, *p.* 407) providing for "agreements or additions as may be endorsed thereon or added thereto and *form a part* of such contract or policy;" and because to construe this clause as a complete independent contract, without resort to the policy, is contrary to the words of the clause which refer to the policy and would do violence to them.

It must be admitted that the mortgagee clause is not an independent contract in the sense that none of the terms of the policy applies to it. It is not in itself complete, but becomes so by reading the policy in connection with it, and the reading of the two together does not clash with the notion that the mortgagee clause creates an independent contract between the company and the mortgagee.

The policy furnishes the terms of the contract between the owner and the insurer, the mortgagee clause is the contract between the insurer and the mortgagee, quite separate from the policy, yet engrafted upon it, and to be understood by reference to the policy which renders it certain and complete.

The policy, therefore, may be looked at for the purpose of showing what the mortgagee contract refers to and establishes, which is quite different, however, from examining the policy for the purpose of defeating the engrafted contract.

The Court of Appeals of New York, in *Eddy* v. *London Assurance Corp.*, 143 *N. Y.* 311, referring to the mortgagee clause, says "the controlling idea was a separate insurance of the mortgagee, freed from the conditions attached to the insurance of the owner, and not to be impaired or weakened by any act or neglect of such owner * * * by taking the insurance in the manner the mortgagee herein did, instead of taking out a separate policy, all the provisions in the policy which from their nature would properly apply to the case of an insurance of the mortgagee's interest would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee must be regarded as ineffective and inapplicable to the case of the mortgagee." See, also, *Smith* v. *Union Insurance Co.*, 25 *R. I.* 260.

The law which applied to the old form "Loss if any payable, &c., to the mortgagee" inserted in the policy (*Sun Insurance Co.* v. *Greenville Building and Loan Ass'n*, 29 *Vroom* 367; *Milliken* v. *Woodward*, 35 *Id.* 444) is inapplicable to the standard mortgagee rider, and although in the body of the present policy, we find, as above noted, the former, yet it there refers in words to the attached mortgagee clause, for the terms of the contract.

Our conclusion is that the standard mortgagee clause creates an independent contract of insurance, for the separate benefit of the mortgagee engrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain, and understood by reference to the policy.

The next contention made in behalf of the company is that the mortgagee clause is not a contract to pay the mortgagee, under any and all circumstances; that it safeguards him only against such an act or neglect of the owner, as would invalidate the policy, and that because the ownership of Fabri-

kant was "other than unconditional and sole," the title to the property being vested in him and his wife, the policy is void *ab initio*, because such untrue statement was a pre-existing fact and not an act or neglect of the insured.

The argument is that inasmuch as the clause declares that the insurance as to the interest of the mortgagee shall not be invalidated by any act or neglect of the mortgagor, this language must refer to acts or neglects of the owner, occurring subsequently to the issuing of the policy, for a void policy could not be invalidated.

We have already determined that the contract insured the mortgagee's interest separately, and there appears to be an undoubted consideration for such contract, not dependent upon the contract with the owner. Therefore, admitting, for argument's sake, that the contract with Fabrikant was void, and never sprang into existence, because a condition precedent had been broken by him, yet there arises an estoppel in favor of the mortgagee against the company, precluding it from setting up that state of affairs, to free itself from liability. It has independently promised to pay the mortgagee's loss, and has represented the instrument to be a policy, and has, by referring to it, made use of that instrument as a valid subsisting agreement, for the purpose of more definitely, by such reference, manifesting its contract with the mortgagee. Therefore, the wording of the clause should be taken distinctly to declare, that the policy is valid and enforceable, and will so continue until rendered invalid by a subsequent act or neglect.

The words of the clause "loss shall be payable," amount to a waiver by the company, in favor of the mortgagee, of the effect of any prior or contemporaneous act of the owner which would have a vitiating effect upon the policy.

A similar argument was made in *Syndicate Insurance Co.* v. *Bohn,* 65 *Fed. Rep.* 165. Judge Sanborn, writing the opinion for the United States Circuit Court of Appeals for the Eighth Circuit, had to deal with a policy which, in that suit, had, as against the owner, been declared void on the above ground. He then considers the validity of the insurance in

favor of the mortgagee, arising from a clause similar to that here under consideration. After tracing the evolution and history of policies intended to secure the interest of mortgagees, and of this clause, the learned judge says:

"The inference is irresistible that they intended to, and that they did thereby, agree that no act or neglect of the mortgagors, unknown to the mortgagee, whether prior or subsequent to the date of this contract, should avoid it. Moreover, these insurance companies cannot now be heard to say that these contracts were void in their inception, as to the interest of the mortgagee. They tendered to this mortgagee their own policies running to third parties, and their contracts with the mortgagee that these policies should not be invalidated by any act or neglect of the parties. The policies had been issued by themselves, and any third party had the right to rely upon their statement as to the validity of their own policies. The policies certainly could not be invalidated unless they were then valid, and the tender of them to this mortgagee as contracts of insurance of its interest as mortgagee, with promises that they should not be invalidated, was a clear representation to the latter that those policies were then valid. The mortgagee undoubtedly relied upon this representation, and on the faith of it accepted the policies and the mortgage clauses as binding agreements of indemnity. If the insurance companies had notified this mortgagee at any time before the loss that the original policies were or might have been invalid at the inception of the contracts between them, the latter would undoubtedly have surrendered the contracts, and sought insurance elsewhere. They waited until the loss had occurred, and it is now too late for them to retract their representations. They are estopped to deny the truth of their statement, to the manifest injury of the mortgagee."

See, also, generally on this point, 2 *Cooley's Briefs on the Law of Insurance* 1228.

A policy of fire insurance in the standard form, which is void as to the assured owner because of his breach of the warranty that his interest is not other than unconditional and

sole ownership, may nevertheless be valid as to a mortgagee, when the mortgagee clause in the usual form is attached to the policy.

The further point is made that the provision in the policy, exempting the company for loss caused by order of a civil authority, applies to the mortgagee. The reasoning is that such order of civil authority cannot be an act or neglect of the owner, but is a mere limit of the liability of the company, and the contract with the mortgagee does not extend the liability specified in this provision of the policy.

The points are presented by requests to charge and they were, in substance, that there could be no recovery for loss directly or indirectly, by order of the civil authorities; that the notice of the inspector of buildings of the city of Hoboken was such order; that it was a jury question whether the fire had in fact rendered the buildings dangerous to human life; that the finding of the inspector of buildings was not binding upon the jury, and that it was not enough that the dangerous condition arose from the fire, if it could have been removed by reparation; that if the damage could be repaired, that should be the measure of the verdict for the plaintiff, and that if the jury find that repairs could have been made for a cost of any one of the different estimates of the defendant, the company is not answerable for the tearing down of the building.

The court charged that the significance of the testimony as to the cost of repairs is to show the value of the buildings at the time they were burned, "because if they could have been repaired at a cost not exceeding $2,000 that would fix the value at that time. You have the testimony of the plaintiff's witness that, in his judgment, the buildings were worth $9,000. You have the testimony of Mr. McBride, that in his judgment, they could be repaired for not exceeding $2,000, and that is supported by the testimony of his experts that it could have been done for about $1,600."

The court further charged:

"You have no right under the evidence to say that one side says it is worth $2,000 and the other side valued it at $9,000 and therefore, we will split the difference, * * *

The damage was either $2,000 or $9,000 under the evidence, and so you must adopt one view or the other in arriving at your verdict."

The loss, if any, occasioned by the destruction of the buildings was involved in the prior question whether there was a total loss or not, growing out of the fire. The fact that the inspector's opinion did not bind the jury they were distinctly told, and the plaintiff's figures and the defendant's figures were laid before them for their determination.

The charge, therefore, was a plain instruction that they might take either the defendant's contention and find a verdict for $2,000 or they might, if they believed the plaintiff's evidence that there was a total loss, find a verdict for the larger amount. There were, therefore, no errors by charge, or by omission to charge, committed by the court in its instructions to the jury.

The next point made is that there was no proof of loss or appraisal, made by either mortgagor or mortgagee.

A provision for the submission of an appraisal as a prerequisite to a suit is legal. *Wolfe* v. *L. L. & Globe Insurance Co.,* 21 *Vroom* 453; *Hamilton* v. *L. L. & Globe Insurance Co.,* 136 *U. S.* 242.

The present policy provided that the said ascertainment, that is of the actual cash value of the loss, should be made by the *insured,* and by the company.

The effect of this clause was held to be a prerequisite to recovery in the case last cited.

The question is whether the mortgagee under the clause insuring him, is exempted from the proof of loss and appraisal. The standard clause does not make it obligatory on the mortgagee to furnish proofs of loss, and the rule is stated by *Clement on Fire Insurance* 206, to be:

"Unless the mortgagee clause attached makes it obligatory on the mortgagee to furnish proofs of loss, he is not required to furnish them as a condition precedent to his right of action on the policy. The failure of the mortgagor or owner to furnish the proofs, constitutes one of the neglects, from

the invalidating consequences of which the mortgagee is exempt."

The express terms of the policy limit the furnishing of such proofs to the insured; therefore, a demand upon the mortgagee to do so is without the express agreement contained in the contract, and is not binding upon the mortgagee.

A further contention is made by the defendant, arising out of the fact that some amount was derived by the owner from the salvage from the sale of the buildings, the amount of which, however, was not in proof.

The defendant, therefore, urges that the judgment was for an improper amount, and raises the point by assigning error upon the refusal to charge its request "That the jury must make allowance for the salvage for the amount realized on the sale of the building, and that if the jury cannot properly estimate that salvage, the plaintiff cannot recover at all."

An appropriation by the owner of the proceeds of the sale of the debris, after total loss, to his own use, would be an act of the owner, but such act would not invalidate the insurance of the mortgagee, or cast upon the mortgagee the burden of proving the amount realized from such sale.

When a building has been totally destroyed, as must be here assumed to be the case, under the finding of the jury, the company is liable to pay for the whole value of the building as it stood, without reference to the residue therefrom, although that may have some value.

In *Seyk* v. *Millers' National Insurance Co.*, 74 *Wis.* 67, it is said:

"The evidence is that all the combustible materials in the structure were destroyed, and although portions of the brick walls were left standing, yet they were useless as walls * * * It cannot be doubted that the identity and specific character of the insured building were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings within the meaning of the statute. 1 *Wood Ins.*, § 107."

The provision of the policy that it shall be optional with

the company to take all or any part of the articles at the ascertained and appraised value, and also to repair the property on giving notice of its intention to do so, but that there can be no abandonment to the company of the property described, would indicate that the salvage became the company's only upon notice of its election to take it, but at any rate that is a matter not affecting the amount of recovery by the mortgagees of the full amount of its indemnity, in case the loss is total.

We find no merit as against the plaintiff in the errors assigned in this particular.

The remaining assignments of error have been examined, but are found to be without substance.

The judgment therefore should be affirmed and it is so ordered.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, JJ. 11.

*For reversal*—None.