JOANNE MELTON v. AETNA INSURANCE COMPANY.

(No. 6848)

Submitted January 27, 1931. Decided February 10, 1931.

*Steptoe & Johnson, Stanley C. Morris* and *J. Hornor Davis, II,* for plaintiff in error.

*L. E. Given* and *Thomes Coleman,* for defendant in error.

LIVELY, JUDGE:

The Aetna Insurance Company complains of a judgment entered by the circuit court of Kanawha County which denied it a writ of error and supersedeas to a judgment of the common pleas court for $2,110.00 recovered by Joanne Melton in an action of assumpsit upon a policy of insurance upon a dwelling house.

Joanne Melton owned lots 7 and 8, block I, situate in Chesapeake, Kanawha County. A dwelling, intended as a gift to plaintiff, was erected by plaintiff's husband so as to enhance the value of the property; and on April 3, 1926, the defendant insurance company, through its local agent, issued to plaintiff a fire insurance policy effective for three years, during which time the house was destroyed by fire. It was thereafter learned that the dwelling was not located on lot 7, as was supposed, but in fact was situate on lot 6, owned by Willie Bowen; and for that reason, payment under the terms of the policy was refused, defendant contending that

the insurance contract had been breached and relying on the provisions in the policy which stated that ''This entire policy shall be void, unless otherwise provided by agreement in writing added thereto, (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple, * * *.''

It is to be noted that no written application for the insurance was made by the plaintiff. According to the testimony of the insurer's agent, he knew that all the Melton property was in the wife's name and he asked Melton if he wanted it written as his other insurance. Melton testified that the agent made no inquiries regarding the title; and the theory of plaintiff's case is stated in instruction III, given by the court:

> ''The court further instructs the jury that if you believe from the evidence that the defendant insurance company issued the policy in question without a written application therefor, and that no representation was made by the plaintiff, or her agent unto said defendant, or its agent, relating to the ownership of the said dwelling destroyed by fire, or the lot on which the same was situated, and that the agent of the defendant company at or before the issuance of said policy made no inquiry as to the true ownership of said dwelling or lot, that the said defendant insurance company thereby waived the two provisions contained in the printed policy providing that said policy should be void 'if the interest of the insured be other than unconditional and sole ownership' or that 'of the subject of the insurance be a building upon ground not owned by the insured in fee simple', provided that you further believe that the plaintiff, or her agent, had no knowledge or information that such dwelling was situated on a lot not owned by said plaintiff.''

This is the pivotal question. Questions of fact, intimating that the fire may have been of incendiary origin and indicating that plaintiff's husband may have known, prior to the fire, that the dwelling had been built on the wrong lot, have been determined by the jury favorable to plaintiff; hence, we are now concerned only with the legal principle involved.

The case cited by plaintiff's counsel to uphold her theory is that of *Wolpert* v. *Northern Assurance Company*, 44 W. Va. 734, which held: "If an insurance company elects to issue its policy of insurance against a loss by fire without any regular application, or without any representation in regard to the title to the property to be insured, it cannot complain, after a loss has occurred, that the interest of the insured was not correctly stated in the policy, or that an existing incumbrance was not disclosed." That decision followed a Virginia case (*Insurance Co.* v. *Rodefer*, 92 W. Va. 747), which was later repudiated in *Westchester Ins. Co.* v. *Ocean View Co.*, 106 Va. 633. In the latter case the insurance company delivered the policy without any application or representation by the assured concerning the property, the policy providing that it should be void "if the * * * subject of insurance be a building on ground not owned by the insured in fee simple." It developed that the property insured was upon a pier built upon the bed of Chesapeake Bay, owned by the Commonwealth of Virginia; and while the insurer was estopped to set up a breach of the condition of the policy as to title as a defense to recovery for a loss sustained, because the insurer was held to the knowledge that a public statute declared the property to be that of the state, it was held that the insured by accepting the policy was charged with notice of its contents and bound by its conditions, and that the company, by issuing the policy without inquiry, did not waive the condition as to ownership unless the facts were known to the company or its agents when the policy was issued, or the company was chargeable with such knowledge. This Court, in *Oliker* v. *Insurance Co.*, 72 W. Va. 436, recognized that the holding of the *Wolpert* case was opposed to correct legal principles and to the weight of authority, and as to personal property held that if at the time of the contract for insurance, no written application was required and none taken, and no information or notice given the insurer or its agent, and there was no inquiry of or representation made by the insured, respecting the existence or non-existence of chattel mortgages or deeds of trust on the property, and the insurer at or before the delivery of the policy has had no knowledge or in-

formation concerning the same, and the insured accepts the policy, with the affirmative warranties therein against such encumbrances, which by the terms of the policy will render it void, the contract will be enforced according to its terms, unless the warranties be waived, as provided therein, and oral evidence of prior or contemporaneous agreements will not be received to vary or contradict the terms of the policy. Plaintiff's counsel, however, relying on a statement in the *Oliker* case to the effect that the law of the state is that affirmed in the *Maupin* case (53 W. Va. 557), limited or modified by the *Medley* case (55 W. Va. 342), contends that the rule in the *Wolpert* case is not altered so far as it is applicable to the case at bar. We cannot subscribe to such a contention. A careful study of these cases brings us to the conclusion that the Oliker decision incorporates the rule of the Maupin case and the limitation of the Medley case. While it is true the *Oliker* case involved a breach of the condition against future encumbrances, we cannot see that the rule would be changed merely because another clause of the policy had been violated.

It is difficult to see how the rule in the *Wolpert* case could apply to the case now before us, for a written application or an inquiry into the condition of plaintiff's title would have been of no benefit. By a survey alone could it have been ascertained that the house was built upon the wrong lot, and certainly there is no such duty imposed upon the insurer. The form of the policy issued to the insured is that prescribed by law. The public has a keen interest in the enforcement of insurance contracts, because of the rates it must pay for fire protection and because of the risk to life and property it must undergo when fires occur; and as an expression of that interest the legislature has provided a standard uniform policy for all fire insurance in this state, one provision of which is the requirement that a building be situate upon land owned in fee simple by the insured, unless it be provided otherwise by agreement in writing added or endorsed on the policy. The law does not preclude one having less than a fee simple title to land or one having a building even on leased premises from obtaining insurance; but it re-

quires that the insured put the company on notice in such instances. To the casual reader it may appear that there is no reason why the insurer should object to compensating for the loss of this dwelling, since the cause of the loss was not occasioned by the fact that the house stood upon the wrong lot. But, it is to be remembered that the policy is the result of mutual assent; that the insurer, recognizing the increased hazard of insuring buildings situate on land not owned by the insured, may refuse to insure or it may charge a rate commensurate with the risk. The actual facts were misrepresented to the insurance company, though without any knowledge of their falsity so far as plaintiff is concerned, and without any intent to deceive; but to say that the provision of the policy in the instant case is to be given no effect is to change the provisions of the policy and to charge the insurance company with an agreement to which it never assented. We are, of course, sympathetic with the in-. sured, and it is likely that the defendant company can better stand the financial loss than she; but this is a court of law and we must give effect to the legal conduct of the contracting parties. We cannot impute liability to the insurer merely because plaintiff was not sufficiently careful in establishing the boundaries of her lot.

We are aware that a number of courts have reached a contrary result; but our conclusion has support in numerous cases. See *Re Millers' & Mfgrs' Insurance Co.*, 106 N. W. 485 (Minn.), 4 L. R. A. (N. S.) 231, and cases cited therein; *Wilson* v. *Germania Fire Ins. Co.*, (Ky.) 131 S. W. 785; *Insurance Co.* v. *Haas*, 87 Ky. 531; *Va. Fire & Marine Ins. Co.* v. *Machine Co.*, (Va.) 59 S. E. 369; cases cited in 2 Ann. Cas. 286; 5 Cooley's Brief on Insurance, 4228; *Del Guidici* v. *Ins. Co. of N. Y.*, 120 Atl. 5 (N. J.) The basis of these decisions, as pointed out in *Insurance Co.* v. *Ocean View Company, supra,* is the policy itself, for the insured, by accepting the policy is charged with notice of its contents and bound by its conditions; and when the insured attempts to receive the benefits of the policy, he is estopped from denying his assent to the stipulations.

Being of the opinion that the court erred in giving instruction III, and that, under the facts as developed, should have directed a verdict in favor of defendant, we reverse the judgment of the lower court and set aside the verdict.

*Judgment reversed; verdict set aside; case remanded.*