The defendant protests a judgment against it based on the standard mortgagee clause, upon the ground of "no insurable interest."
Mrs. Joanne Melton was the owner of a town lot No. 7. Her husband erected a house for her on the adjoining lot, No. 6, to which she had no title, under the impression that the structure was on lot No. 7. The building was completed about April, 1926, and was insured for her with the defendant on April 3rd, for $2,000.00, against loss by fire. She executed a deed of trust on lot No. 7, dated July 1, 1926, to secure payment *Page 63 
of $1,000.00 borrowed from plaintiff upon an application dated June 16th. Sometime later in July, the defendant attached the mortgagee clause to the policy, in favor of plaintiff. The house was destroyed by fire during the term of the policy.
Mrs. Melton brought an action against defendant, which failed because of a provision in the policy that it should be void "if the subject of insurance be a building on ground not owned by the insured in fee simple." See Melton v. Ins. Co.,110 W. Va., 73, 157 S.E. 33, 34. The plaintiff takes the position, however, that the mortgagee clause conferred on it an independent and absolute right of recovery in case of loss by fire.
The parts of the clause which are pertinent here, follow:
 "Loss or damage, if any, under this policy, shall be payable to Imperial Bldg. Loan Association of Charleston, W. Va., as mortgagee (or trustee) as interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property * * *.
 "Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim.
 "Attached to and forming a part of Policy No. __________"
The plaintiff relies on the following statement of law made in the opinion of Fayetteville Ass'n. v. Fire Ins. Co., 105 W. Va. 147,150, 141 S.E. 634, 635: "Although there are decisions to the contrary, the great weight of authority in this country supports the view that when there is attached to a *Page 64 
policy of fire insurance the so-called 'standard' or 'union' mortgage clause providing that the insurance shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, an independent contract between the insurance company and the mortgagee is created, and no act or omission of the mortgagor, of which the mortgagee is ignorant, will invalidate the policy, whether it occurs before, at the time of, or subsequent to the issuance thereof."
That statement is the one generally made by annotators and textwriters. It is questionable, though, whether "the great weight of authority" supports every section of the statement either separately or jointly. The statement is the sum of several leading decisions, each of which was moulded by the particular clause involved and the particular facts presented, and was never designed to be applied to all cases indiscriminately. To do so in cases where the mortgagor had no insurable interest in the insured property would be to open wide the door for collusion and fraud between policy holder and mortgagee. In a thoughtful discussion of some of the very decisions referred to in the Fayetteville Ass'n. case, the supreme court of New York said in Lyceum v. Ins. Co.,163 N.Y.S. 226, 231: "When an insurance company contracts with a mortgagor and with a mortgagee, and makes the contract with the latter a part of the policy, it cannot be the intention to nullify the essential stipulation upon which its validity depends, leaving a mere provision to pay absolutely in case of loss." Lest the bar accept the statement quoted from theFayetteville Ass'n. case as a rule-of-thumb to which we have become committed, it is necessary to consider decisions of which the statement is the composite. Research has found nothing supporting the statement except repetitions of the reasons propounded in the following three groups of leading cases: (1) Ins. Co. v. Bohn, 65 F. 165, 177-8, and Ins. Co. v. Bally, 19 Arizona, 580, 585; (2) Hastings v.Ins. Co., 73 N.Y. 141, 148, and Reed v. Ins. Co., 81 N.J.L. 523,526; (3) Hastings v. Ins. Co., supra, 154, and Bacot v.Ins. Co., 96 Miss. 223, 241.
(1) In the Bohn case the scope of the words "shall not be invalidated by any act or neglect of the mortgagor" was extended to apply to acts prior to the attachment of the mortgagee *Page 65 
clause, on the ground of estoppel. The opinion states that the insurance companies "tendered" to the mortgagee their own policies running to third parties, with the agreement that the policies should not be invalidated by any act or neglect of those parties; that the policies could not be invalidated "unless they were then valid"; and that the tender of them to the mortgagee "was a clear representation to the latter that those policies were then valid" and the insurers "are estopped to deny the truth of their statement to the manifest injury of the mortgagee." That opinion has little, if any, bearing on the instant case. Here there was no tender by the defendant in any fair sense of the word. It initiated no proposal of any kind, and did nothing to induce the loan to Mrs. Melton. The loan preceded instead of followed defendant's recognition of the mortgagee. The plaintiff had changed its position to itsprejudice, before whatever representation the mortgagee clause implied, was made. So estoppel does not properly arise in this situation.
The Bally decision, in making the same extension of the clause as the Bohn case, supplemented the latter as follows: "As is well known, many insurance policies are issued primarily to protect mortgagees. * * * We think the mortgagee, when a policy is presented to him with a standard mortgage clause attached thereto in his favor, is justified in assuming that the insurance company has satisfied itself that the policy is valid and free from impeachment for any conduct or act of the assured at its inception or prior to the attachment of the mortgage clause." That decision is equally inapropos here because (a) the policy was not issued primarily to protect the plaintiff but to protect Mrs. Melton; (b) the clause did not induce, but followed, the loan; (c) the policy afforded the defendant full protection in case Mrs. Melton's interest was not that of sole and unconditional ownership, so that there was no occasion for the defendant to examine her title or even be concerned about it; and (d) the plaintiff was charged with notice (from the policy itself) of the defendant's lack of concern in that respect. In the face of such notice, the plaintiff could not rest on the above assumption. Trust Co. v.Ins. Co., 35 Ga. App. 467, 468, 133 S.E. 652. *Page 66 
Both the Bohn and the Bally decisions take no notice of the innumerable times the policy holder, at the instance of the mortgagee, has the insurer to execute the mortgagee clause. The supreme court of Texas has held in such cases that the policy holder is the representative of the mortgagee, and that if the policy holder does not own the insured property or in some other manner has avoided the policy, the mortgagee cannot accept the benefits of the transaction without also assuming its burdens. Ins. Co. v. Bank, 34 S.W. 333, 335.
The case of Gennesee Ass'n. v. Ins. Co., 44 N.Y.S. 979, supports the Texas case, holding that the mortgagee clause "does not avoid the effect of a representation that the mortgagor was the owner of the premises, whereas he was only a tenant by entirety, where the application for the insurance, though made by the mortgagor was at the instance of the mortgagee, and the policy delivered to it." The holding of the last two cases is essentially sound. The Bohn and Bally
decisions would make the insurer a guarantor of the policy, which in effect would make it a guarantor of the mortgagor's title to the insured property in case of loss by fire. Such a guaranty is a burden never contemplated by the original parties to the policy and for which the insurer received no consideration. That the attachment of the clause is "a clear representation" of the validity of the title or warrants the assumption that the insurer has satisfied itself that the titleis valid, has no basis in fact. The business world knows that insurance companies ordinarily make no record investigation of title before issuing policies, and it is equally well known that banks and loan associations place no reliance on insurance policies as muniments of title, but go to the public records therefor. Because of this knowledge, it is not apparent why courts should create a fanciful situation in order to coddle the money lender, who the world over is noted for his ability to protect himself. The rational view is that of Judge Putnam concurring in Lyceum v. Ins. Co., Supra 233. "The 'mortgagee clause' presupposes an insurance contract. But, if the risk never attached, the mortgagee's rights have had no inception." Unless actual fraud or estoppel exists the clause should be taken to be prospective. Ins. Co. v. Porter, 44 Fla. 568, *Page 67 
584-5, 33 So. 473; Ins. Co. v. Bank, 136 Va. 402,118 S.E. 236.
(2) In the Hastings case, it was held that the intent of the clause was "beyond question to insure the plaintiffs (the mortgagees) under a new contract." That pronouncement was elaborated in the Reed case as follows: "The standard mortgage clause creates an independent contract of insurance for the separate benefit of the mortgagee, engrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain and understood by reference to the policy." The opening line in the Hastings case is, "A contract of insurance stands upon precisely the same basis as any other agreement," but both the Hastings and the Reed cases overlook the question of consideration (the basis of all contracts) for the "independent contract of insurance." The offer, the acceptance, and the premium paid (the usual contractual relations) are transactions ordinarily between the insurer and the insured. The mortgagee in fact is simply a third party who is recognized jointly by the insurer and insured as having conditional rights in the insurance contract ("as interest may appear"). Consequently the supreme court of South Carolina rejects the conception that the clause creates a new and independent contract, etc., as "entirely due to (a) a magnified estimate of the difference between an open mortgage clause and a standard clause, and (b) an overfusion of thought between anindependent contract and an independent cause of action." That court holds that the clause confers only a benefit or interest upon the mortgagee, which the latter may enforce, not upon the ground that he has made a contract with the insurer, "but upon the familiar principle that where a contract is made between two persons, which secures a benefit to a third person, who may have paid nothing for it * * * such third person may enforce the benefit which the contract contained in his favor." Walker
v. Ins. Co., 136 S.C. 144, 162-3-4, 134 S.E. 263. There is much logic in that position. Supporting the South Carolina court in spirit, if not in letter, are the supreme courts of (a) Massachusetts, which criticizes the "new contract" construction of the clause as "in substance adding a new and gratuitous promise to an existing agreement upon executed consideration," *Page 68 Davis v. Ins. Co., 135 Mass. 251, 256; (b) Washington, which bluntly holds: "The mortgage clause is not a complete contract, nor does it profess to be," Am. B. and L. Ass'n. v. Ins. Co.,11 Wn. 619, 625-6; and (c) Indiana, which holds: "Under certain conditions the mortgagee acquires an interest, but the arrangement to pay the mortgagee is not of the essence of the company's (insurer's) obligation." Ins. Co. v. Wolff,23 Ind. App. 549, 556, 54 N.E. 772, 775.
(3) In the Hastings case, Judge Rapallo realized that the "new contract", required a consideration, so in casting about for one, he construed as such — in a concurring opinion (p. 154) — the provision in the clause subrogating the insurer to the rights of the mortgagee whenever, etc. The learned judge overlooked the fact that the right of subrogation would be of no value whatsoever where the mortgagor had no title to the insured property (as in the instant case). Besides, "the right of the insurer to subrogation exists independent of contract." Kerr, on Ins., sec. 234. Subrogation is a right conferred by equity and is not a contractual right which a party to a contract can grant or deny at pleasure, and therefore would be no consideration whatsoever flowing from the mortgagee to the insurer.
The Bacot case did not mention subrogation, but took the position that the premium paid for the policy was "a continuing consideration" and was sufficient to support the contract between the insurer and the mortgagee, "since it imposes no increased hazard" (the court's own language) on the insurer. Yet, that case also held that "the very design and purpose" of the clause was to place the insurable interest of the mortgagee on "a safer basis" than if subject to defeat by the conditions imposed on the insured. Those two positions are not consistent, because placing the mortgagee on "a safer basis" than the insured would necessarily increase the hazard of the insurer. The policy expressly limits the consideration for the premium, to insurance against "direct loss and damage by fire." Under that limitation, the premium pays for nothing but the risk offire, and any extension of the premium beyond that limitation is arbitrary. The fact is, the provisions of the clause are dictated by statutory law (in a large number of cases if not exclusively at the *Page 69 
present time), and the consideration to the insurer for executing the clause is the legislative permission for it to dobusiness within the state. Whatever may have been the legislative purpose in this requirement, there is no occasion for courts to resort to an unnatural application of the clause.
The plaintiff has no case, however, even under theReed decision. Let the clause here be treated as a graft uponthe policy "to be rendered certain and understood by reference to the policy," as was done in that decision. The promise of this defendant in the clause is that loss under the policy
shall be payable to plaintiff "as interest may appear." Interest in what? Undoubtedly interest in the property described in the policy. That property was the house on lot No. 6, in which the plaintiff had no interest, since its deed of trust embraced only lot No. 7. Its "independent contract" is of no avail, since a contract of insurance in favor of one who has no interest in the insured property is void. This is said to be "a fixed rule of insurance law." Tyree v. Ins. Co., 55 W. Va. 63,64, 46 S.E. 706. Accord: Sheppard v. Ins. Co., 21 W. Va. 368,379; In re Reynolds Estate, 94 Vt. 149, 156; MovingPicture Co. v. Ins Co. 244 Pa. 358, 363-4, 90 A. 642; 1 Couch Cyc. of Ins. Law, sec. 295; Kerr supra., sec. 121. A specific application of this rule to a mortgagee was made in Ins. Co. v.Bank, 129 Okla. 204, 264, P. 142, and in Wilcox v. Ins.Co., 81 Minn. 478, 84 N.W. 334.
Accordingly the judgment of the lower court is reversed and the case remanded.
Reversed and remanded.