## TRAVELERS INS. CO. v. SPRINGFIELD FIRE & MARINE INS. CO.
### No. 10825.

Circuit Court of Appeals, Eighth Circuit.
April 24, 1937.

Gardner Smith and D. C. Chastain, both of Kansas City, Mo., for appellant.

William S. Hogsett, of Kansas City, Mo. (Ralph E. Murray, Alvin C. Trippe, and Henry Depping, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and THOMAS, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge.

This appeal is from a judgment for the defendant in an action at law brought by the Travelers Insurance Company against the Springfield Fire & Marine Insurance Company to recover upon a policy of fire insurance payable to the Travelers Insurance Company, mortgagee, as its interest might appear.

In 1926, B. M. Hudson (mortgagor) and his wife executed a deed of trust mortgaging his farm in Missouri to the Travelers Insurance Company (mortgagee) to secure a loan of $12,000. The trust deed required the mortgagor to keep the buildings on the mortgaged premises insured against fire for not less than $6,000, with loss payable to the mortgagee. The mortgage debt at all times exceeded $4,700.

The Springfield Fire & Marine Insurance Company (insurer) on May 25, 1931, issued to the mortgagor an insurance policy covering various buildings on the mortgaged farm, for a five-year period, against loss from fire and windstorm. Among these buildings was a dwelling valued at $4,700. The policy was issued in consideration of the payment of $115.67 and the further payment, when due, of an installment premium note for $462.68 payable in equal annual installments on the first day of June in each of the years 1932, 1933, 1934, and 1935. The policy contained the following provision for suspension in case of nonpayment of premiums: "But it is expressly agreed that this Company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, or part thereof, given for the premium remains past due and unpaid. When said premium note or obligation is paid this insurance shall again attach from the date of receipt of such payment by the Managers."

Attached to and made a part of the policy was a "Standard Mortgage Clause," which, so far as pertinent, reads as follows:

"Loss or damage, if any, under this policy, shall be payable to Travelers Insurance Company, Hartford, Connecticut, mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall

neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice to cancel this agreement."

The premium note given by the mortgagor to the insurer contained this provision: "And it is hereby agreed that in case any one of the installments herein named shall not be paid at maturity * * * this Company shall not be liable for loss during such default, and the said Policy shall lapse until payment is made to this Company at the Western Department at Chicago. * * *"

The policy was apparently in the possession of the mortgagee, but it had no copy of the premium note.

On June 27, 1932, the mortgagor paid the first installment due upon the note. On June 20, 1932, prior to the receipt of this installment, the insurer had written the following letter to the mortgagee:

"Our records show that you are named as mortgagee under our Policy No. 63247 issued to B. M. Hudson through our agency at Carrollton, Missouri on property located in Section 27, Township 54, Range 23, Carroll County, State of Missouri.

"We hold B. M. Hudson's premium note for $462.68 payable in four equal installments of $115.67 each, maturing June 1, 1932, 1933, 1934, 1935.

"The mortgage clause forming a part of said policy provides that in case the assured or mortgagor neglects to pay any premium due on the policy, the mortgagee or trustee shall upon demand pay the amount due the Company. Take notice therefore that the installment due June 1,

1932 for $115.67 has not been paid, and demand is hereby made on you as mortgagee for payment in accordance with the conditions stated in the mortgage clause attached to the policy.

"You are, therefore, advised that unless we receive a remittance to cover the delinquent premium within ten days from the receipt of this letter, the insurance will be suspended to the mortgagee, and must remain so until payment is made.

"Awaiting your prompt remittance, we are."

The mortgagor did not pay the installment of premium due June 1, 1933, nor did he pay any of the annual installments maturing thereafter. On June 19, 1933, the insurer wrote a letter to the mortgagee, which was received by it on June 21, 1933, calling its attention to the fact that the premium installment due June 1, 1933, had not been paid, and demanding payment thereof from the mortgagee. This letter and the letter of June 20, 1932, above quoted, were in all material respects identical in form, except that the letter of June 19, 1933, referred to the nonpayment of the June 1, 1933, installment of premium, and did not contain the fourth paragraph of the letter of June 20, 1932, relative to suspension of the insurance if the premium was not paid by the mortgagee within ten days. The mortgagee did not pay the June 1, 1933, premium installment or any of the succeeding installments. No payments of premium were made by any one to the insurer after June 27, 1932.

The policy was not canceled, and the insurer did not surrender the premium note. The mortgagee received no further communications from the insurer prior to April 16, 1935. On that date, which was nearly two years after default in premium payments, the insured dwelling was destroyed by fire, causing a loss of $4,700. The mortgagee then demanded from the insurer payment of the loss. The insurer denied liability, and this action was commenced.

The defense of the insurer was that the mortgagor and the mortgagee were both in default for nonpayment of premium, and that the insurance, at the time the loss occurred, was, by the terms of the policy, suspended.

In its reply, the mortgagee admitted default in the payment of premium installments due June 1, 1933, and thereafter, but

alleged that its contract with the insurer was never canceled nor suspended, and that the insurer, by retaining the premium note, had waived default in the payment of premiums.

Trial by jury was waived, and the issues were submitted to the trial court, which held that the default in the payment of premiums by the mortgagee suspended the insurance as to it, that the suspension was in effect at the time of the loss, and that there had been no waiver of this default by the insurer. Judgment for defendant was entered, and this appeal followed.

Three questions are presented for the determination of this court:

(1) Did the failure of the mortgagee to pay, upon demand, the installment of premium due June 1, 1933, cause a suspension of the insurance as to the mortgagee?

(2) Was the retention of the premium note by the insurer after default in the payment of premium installments a waiver of such default?

(3) Did the trial court commit error in admitting the premium note in evidence?

1. The mortgagee contends that the standard mortgage clause, together with the policy to which it was attached, created a contract of insurance between the mortgagee and the insurer entirely separate and distinct from the contract which existed between the mortgagor and the insurer, and that the suspension clause of the policy was no part of the contract of insurance between the insurer and the mortgagee. The mortgagee argues, in effect, that the terms of its contract with the insurer are those found in the mortgage clause, supplemented by only such provisions of the policy as are essential to make the contract of insurance complete, and are unaffected by any of the policy provisions antagonistic to the interests of the mortgagee.

The insurer, while conceding that an independent contract of insurance was created between the mortgagee and the insurer by the mortgage clause, contends that such contract consists of the provisions of the mortgage clause together with all pertinent provisions of the policy, including the suspension clause.

In support of its contention that the contract of insurance between it and the insurer did not contain the suspension clause of the policy, the mortgagee relies upon the rule announced in Eddy v. London Assurance Corporation, 143 N.Y. 311, 38 N.E. 307, 25 L.R.A. 686; Reed v. Firemen's Insurance Co., 81 N.J.Law, 523, 80 A. 462, 35 L.R.A.(N.S.) 343, and similar cases.

In the Eddy Case, the New York Court of Appeals, in determining whether the mortgagee's right of recovery was affected by a clause of the policy providing for contribution in case other insurance was procured by the insured, said (143 N.Y. 311, 38 N.E. 307, 309, 25 L.R.A. 689, 690): "Where the company agreed that the mortgagee's insurance should not be 'invalidated' by any act or neglect of the owner of the property, it was not intended to limit the application of that word to a case where the whole policy would otherwise be rendered invalid. The plain and obvious meaning of the language is that the insurance of the mortgagee should not be affected or in any wise impaired or lessened by any act or neglect of the owner. Although contained in the same policy issued to the owner, yet the insurer and the mortgagee were nevertheless entering into a perfectly separate contract of insurance, by which the mortgagee's interest alone was to be insured, and it would be most natural to provide that no act or neglect of the owner should invalidate— that is, impair—any portion of the insurance thus separately secured. * * * By taking the insurance in the manner the mortgagee herein did, instead of taking out a separate policy, all the provisions in the policy which from their nature would properly apply to the case of an insurance of the mortgagee's interest would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee must be regarded as ineffective and inapplicable to the case of the mortgagee."

The Reed Case involved an action by a mortgagee to recover on a policy of fire insurance with the standard mortgage clause attached. The insurer there contended that the mortgagee could not recover because the insured's interest was other than unconditional and sole ownership; because part of the loss was caused by an order of the civil authorities requiring that the remains of the burned

building be razed; and because no proof of loss was furnished by any one. The court considered first the nature of the contract between the parties, and in that connection said (81 N.J.Law, 523, 80 A. 462, 463, 35 L.R.A.[N.S.] 345, 346):

"It must be admitted that the mortgagee clause is not an independent contract in the sense that none of the terms of the policy applies to it. It is not in itself complete, but becomes so by reading the policy in connection with it, and the reading of the two together does not clash with the notion that the mortgagee clause creates an independent contract between the company and the mortgagee. The policy furnishes the terms of the contract between the owner and the insurer. The mortgagee clause is the contract between the insurer, and the mortgagee, quite separate from the policy, yet ingrafted upon it, and to be understood by reference to the policy which renders it certain and complete. The policy, therefore, may be looked at for the purpose of showing what the mortgagee contract refers to and establishes, which is quite different, however, from examining the policy for the purpose of defeating the ingrafted contract. * * *

"Our conclusion is that the standard mortgagee clause creates an independent contract of insurance for the separate benefit of the mortgagee ingrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain, and understood by reference to the policy."

In neither of the cases above referred to nor in any of the other cases cited by the mortgagee in this same connection was there presented any question of a mortgagee's right to recover for a loss when in default for the nonpayment of premiums, under a policy providing for suspension of the insurance in such event. Those cases do not establish a definite rule with respect to what provisions of a fire policy, in addition to those contained in the mortgage clause, shall constitute the contract of insurance between the insurer and the mortgagee. They do not hold, as we understand them, that it is only the provisions of the mortgage clause together with such provisions of the policy to which the clause is attached as are favorable to the mortgagee which constitute the contract.

In order to determine what the contract between the insurer and the mortgagee is, reference must necessarily be had to both the mortgage clause and the policy of which it is made a part. To ascertain the property insured, the hazard insured against, the amount of the insurance, the duration of the contract, the extent of the coverage, the terms of coverage, the date when the insurance takes effect, the conditions under which it will remain effective, and the amount of the premium, resort must be had to the policy. In other words, the policy fixes the quantity and quality of the insurance except in so far as it may be modified by the mortgage clause, and the general purpose of that clause is to make the insurance provided for in the policy payable to the mortgagee as its interest may appear. Provisions of the policy which are in conflict with provisions of the mortgage clause or which that clause indicates were not intended to apply to the mortgagee would, of course, form no part of the contract between the mortgagee and the insurer. Provisions of the policy which are clearly intended to condition the insurance granted by the insurer to both mortgagor and mortgagee would form a part of the contract of insurance with the mortgagee as well as with the mortgagor. It seems clear to us that the suspension clause of the policy in suit was such a provision. The policy provides that, if an installment of premium is not paid when due, the insurance shall lapse until payment is made, when it shall revive.

It becomes necessary, then, to determine to what extent, if at all, this suspension provision of the policy was modified by the mortgage clause.

The first paragraph of that clause provides that the insurance granted "as to the interest of the mortgagee * * * only therein shall not be invalidated by any act or neglect of the mortgagor * * *; provided that in case the mortgagor * * * shall neglect to pay any premium due under this policy, the mortgagee * * * shall, on demand, pay the same." The mortgagee asserts that this language evidences no agreement on its part that, if it fails to pay a defaulted premium upon demand, the insurance as to it will be suspended; and contends that no such meaning can properly be attributed to the language used. It argues that the words "provided that" are not used in the sense of "on condition that," but must be con-

strued as meaning "however" or "but"; and that the language used must be construed to mean that, if the insured neglects to pay an installment of premium, the insurance as to the mortgagee shall not be suspended, but that the mortgagee is obliged to pay the premium upon demand.

The contention that the language of the proviso of the first paragraph of the mortgage clause creates a simple covenant on the part of the mortgagee to pay such premiums as the mortgagor shall fail to pay, we think cannot be sustained. It is contrary to the plain import of the language used, contrary to ordinary insurance practice, and contrary to the weight of authority, which holds such provisos as this to be conditions and not covenants. Bank of Ipswich v. Harding County Farmers' Mutual Fire & Lightning Ins. Co., 55 S. D. 261, 225 N.W. 721, 63 A.L.R. 925; Coykendall v. Blackmer, 161 App.Div. 11, 146 N.Y.S. 631; St. Lawrence County Farmers' Ins. Co. v. Thompson, 150 Misc. 532, 270 N.Y.S. 898, affirmed 242 App.Div. 747, 274 N.Y.S. 1007, affirmed 266 N.Y. 604, 195 N.E. 220; Home Ins. Co. v. Union Trust Co., 40 R.I. 367, 100 A. 1010, L.R.A. 1917F, 375; John N. Acuff Co. v. Bankers' Trust Co., 157 Tenn. 99, 7 S.W.(2d) 52; Farnsworth v. Riverton Wyoming Refining Co., 35 Wyo. 334, 249 P. 555, 47 A.L.R. 1114; Whitehead v. Wilson Knitting Mills, 194 N.C. 281, 139 S.E. 456, 56 A.L.R. 674; Asher v. Union Assur. Soc., 177 Ga. 662, 170 S.E. 786; Annotations in 83 A.L.R. 105, 56 A.L.R. 679, and 47 A.L.R. 1126. See, also, Trust Co. of St. Louis County v. Phœnix Ins. Co., 201 Mo.App. 223, 210 S.W. 98, and Ormsby v. Phenix Ins. Co., 5 S.D. 72, 58 N.W. 301.

In Bank of Ipswich v. Harding County Farmers' Mutual Fire & Lightning Ins. Co., supra, which was an action brought by a mortgagee (which had failed to pay a delinquent assessment after notice of delinquency) to recover on a fire policy with the standard mortgage clause attached, the court said (55 S.D. 261, 225 N.W. 721, 722, 63 A.L.R. 928): "So, in the case at bar, we are of the opinion that, when appellant bank failed to pay the delinquent assessment, it failed to perform one of the conditions of its separate contract with the insurer, and thereby lost the protection afforded by the mortgage clause; that is, Clark having failed to pay the premium and thereby the policy having been suspended as to him, when the appellant mortgagee, being advised of Clark's default, also failed to pay, appellant thereafter also held the insurance subject to the conditions of the original policy. By these conditions, the policy was suspended and remained suspended as to appellant until, after the loss occurred, the assessment was paid."

The mortgagee seeks to distinguish the case just quoted from, on the grounds (1) that the suspension was by virtue of a statute (section 9259 of the South Dakota Revised Code of 1919) providing that the policy of a delinquent member of a county mutual company shall stand suspended if payment of an assessment is not made within the proper time, and (2) that the notice of delinquency to the mortgagee stated that the policy would be canceled on a date which was prior to the fire loss. Whether a suspension provision is made a part of the policy by statute or by the act of the parties, we think should make no difference. As to the notice that the policy would be canceled, it is obvious, from the quoted portion of the opinion, that the court did not hold that the policy was canceled, but held that it was suspended by failure to comply with one of the conditions of the mortgagee's separate contract.

To read out of the policy in suit the suspension clause in order to make it a more favorable contract for the mortgagee than for the mortgagor or other policyholders of the same class might well be regarded as a violation of the spirit, if not the letter, of Rev.St.Mo.1929, § 5866 (Mo. St.Ann. § 5866, p. 4477), prohibiting discrimination in rates between "risks of essentially the same hazards and having substantially the same degree of protection against fire."

There are cases which support the mortgagee's contention that a proviso similar to that here involved is not a condition, but a covenant binding the mortgagee to pay defaulted premiums, St. Paul Fire & Marine Ins. Co. v. Upton, 2 N.D. 229, 50 N.W. 702; Boston Safe Deposit & T. Co. v. Thomas, 59 Kan. 470, 53 P. 472; Stoddart v. Black, 134 Kan. 838, 8 P.(2d) 305, 83 A.L.R. 100; Baker v. Fargo Building & Loan Ass'n, 64 N.D. 317, 252 N.W. 42, but we must decline to follow them. Whenever a mortgagee intends to guarantee the payment of defaulted premiums on a fire policy, apt language is available to express that purpose.

The general rules of construction applicable to insurance contracts are well

understood, but we take the liberty of calling attention to some statements, found in the decisions, which we deem appropriate to the situation here presented:

In McGlother v. Provident Mut. Acc. Co., 89 F. 685, at page 689, this court said: "Contracts of insurance are not made by or for casuists or sophists, and the obvious meaning of their plain terms to the business and professional men who make and use them must not be discarded for some curious and hidden interpretation that is to be reached only by a long train of acute and ingenious reasoning."

In Guarantee Company of North America v. Mechanics' Savings Bank & Trust Company, 183 U.S. 402, at page 419, 22 S. Ct. 124, 131, 46 L.Ed. 253, after referring to the rule that an ambiguous provision of an insurance contract is to be construed most favorably to the insured, the Supreme Court said: "But this rule cannot be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements compliance with which is made the condition to liability thereon."

In Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, at page 492, 52 S.Ct. 230, 231, 76 L.Ed. 416, the following language is found:

"It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual Life Ins. Co. v. Hurni Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Stipcich v. Insurance Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462, 463, 14 S. Ct. 379, 38 L.Ed. 231. As long ago pointed out by this court, the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief. Klein v. Insurance Co., 104 U.S. 88, 91, 26 L.Ed. 662; New York Life Ins. Co. v. Statham, 93 U.S. 24, 30, 31, 23 L.Ed. 789; Pilot Life Ins. Co. v. Owen (C.C.A.) 31 F.(2d) 862, 866. And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles."

In Williams v. Union Central Life Ins. Co., 291 U.S. 170, at page 180, 54 S.Ct. 348, 352, 78 L.Ed. 711, 92 A.L.R. 693, Mr. Chief Justice Hughes, in delivering the opinion of the court, said: "As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

Our conclusion is that it was the intention of the parties to the contract of insurance between the insurer and the mortgagee that the suspension clause of the policy should be effective as to the mortgagee if it, upon demand, failed to pay an installment of premium which was in default; and that this intention was expressed in appropriate language and was binding upon the mortgagee. We do not regard the language of the second paragraph of the mortgage clause as in any way militating against this conclusion. That paragraph not only required the mortgagee to notify the insurer of any change of ownership or occupancy or increase of hazard coming to its knowledge, but also required it to pay a premium for any such increase in hazard, and further provided that "otherwise this policy shall be null and void." It is to be noted that the first paragraph of the mortgage clause refers to acts

or neglects of the mortgagor which, by the terms of the policy, impair the insurance. The second paragraph refers to an act of the mortgagee which it is agreed shall render the policy null and void. There was no necessity for stating in the first paragraph of the mortgage clause what effect an act or neglect of the mortgagor should have upon the insurance granted, since that was covered by the policy itself. The second paragraph adds a provision relating solely to the effect of an act of the mortgagee not referred to in the policy.

■ There is no merit in the contention of the mortgagee that the letters written to it by the insurer, demanding payment of premiums in default, constituted a practical construction of the contract of insurance contrary to that which the insurer now contends for. By the fourth paragraph of the letter of June 20, 1932, the insurer waived a suspension of the insurance for ten days from the time that the mortgagee received the letter. The letter of June 19, 1933, demanded of the mortgagee the payment of the premium then in ·default, and contained no waiver of suspension. Both of these letters were consistent with the claim of the insurer that a failure by the mortgagee to pay a defaulted premium would work a suspension of the insurance.

■ The answer to the contention of the mortgagee that, in order to escape liability to it, the insurer was required to cancel the insurance, is that the contract did not so provide. _ Ordinarily an insurer only cancels a policy upon a risk which it no longer desires to insure. There is nothing to indicate that this risk was of that character. It is a fair inference that the insurer was willing to carry this insurance at all times, provided (meaning on condition) that the premiums were paid. The failure of the insurer to cancel the policy and its retention of the premium note so indicate.

The mortgagee in this connection stresses the case of Prudential Ins. Co. of America v. Franklin Fire Ins. Co., 180 S. C. 250, 185 S.E. 537, which it regards as directly in point. In that case the mortgagee sought to recover for a fire loss which occurred while premiums were in default. The insurer had written a letter to the mortgagee less than a month before the fire, demanding payment of the premium installment then past due. Payment was not made. The court held that the proviso in the mortgage clause requiring the payment of premiums by the mortgagee in the event the mortgagor failed to pay them constituted a condition, and that failure to comply therewith gave the insurer the right to cancel the policy; but held that the insurer had given no notice of cancellation, and that the policy was therefore still in force at the time of the loss. No question of the applicability of a suspension clause of the policy was there involved, and there is nothing to show that the policy which that court was considering contained any such clause. That case would be directly in point on the question of cancellation (were that question presented) if the policy in suit here contained no suspension clause.

■ 2. The retention of the premium note by the insurer could not, under the circumstances of this case, constitute a waiver of the default of the mortgagee in the payment of premiums, for the reason that such retention was not inconsistent with the insurer's claim that the default of the mortgagee worked a suspension of the insurance. The insurer had a right to hold the note without accelerating its maturity, and to accord to the mortgagor and to the mortgagee an opportunity to revive the insurance by paying the premium installments which were in default.

■ 3. Whether the premium note was admissible in evidence we need not determine. The trial court could not have committed prejudicial error in receiving it. No jury was present, and, on appeal in such a case, it will always be presumed by this court that the trial court considered only the lawful evidence in the case. Anderson v. United States (C.C.A.8) 65 F.(2d) 870, 872; United States v. National Bank of Commerce of Seattle (C.C.A.9) 73 F.(2d) 721, 724, 725. Moreover the record here shows that the court below based its conclusion entirely upon the mortgage clause and the policy of which it formed a part.

Our conclusion is that the mortgagee's failure to pay the installment of premium which was due on June 1, 1933, upon demand, constituted a breach of a condition, which had the effect of automatically suspending the insurance as to the mortgagee; that the insurance therefore was not in force at the time of the loss; and that

there has been no waiver of the mortgagee's default by the insurer.

The judgment is affirmed.